LEPAK and others, Respondents, vs. LEPAK and wife, imp.,
Appellants.

*October 21—November 16, 1920.*

*Deeds: Consideration: Covenants for the benefit of third persons:
Discharge: Trial: Failure to object to improper testimony.*

1. Where parents deeded their farm to their son on condition
   that he support them for life and make certain payments to
   other children on their becoming of age, and agreed that,
   upon a sale of the farm by the son, they would accept $1,000
   in satisfaction of their rights, and subsequently, when the
   farm was sold by the son and the agreed sum paid them, they
   executed a quitclaim deed, a finding of the court as to the
   understanding of the parties when the quitclaim deed was
   made will not be disturbed, although parol evidence was re-
   ceived, as this line of testimony was not objected to by ap-
   pellant but was in fact first offered by him.
2. Where a grantee in a deed, as part of the consideration, agreed
   to pay money to third parties, the situation of debtor and
   creditor arose between the grantee and such persons, even
   though no consideration passed from them and irrespective
   of whether they knew of the conveyance or not.

APPEAL from a judgment of the circuit court for Mara-
thon county: A. H. REID, Circuit Judge. *Affirmed.*

This was an action of an equitable nature brought by a
brother and three sisters of appellant *John Lepak* to recover
from him $200 each, with interest from the date that each,
respectively, became twenty-one years of age.

On June 23, 1906, and for many years previous thereto
appellant *John Lepak* lived with his parents upon their
farm. On that date, by a deed duly executed by the parents
and accepted by the said *John Lepak,* the former conveyed
to the latter a portion of their farm. The deed, so far as
material to this appeal, read as follows:

"Theodore Lepak and Rozalya, his wife, . . . hereby
convey . . . to *John Lepak,* . . . . for the sum of two thou-
sand dollars ($2,000), the following tract of land, . . . as
a further consideration said *John Lepak* shall pay and give

to said Theodore Lepak and wife each year during their natural lifetime the following: Five barrels of wheat flour, 5 pounds unspun wool, 4 bushels wheat, 400 pounds pork, 10 pounds butter, 10 bushels potatoes, 10 pounds coffee, 40 bars soap, 4 bushels peas, and always furnish them with two milch cows with sufficient hay and straw and pasture for same. Also to allow said Theodore Lepak to fish in said pond on said premises and to allow Stanislaus Lepak to cut ice on pond on said premises. Also to pay to the following heirs the following sums of money: To *Mary Lepak* $200, to *Anna Lepak* $200, to *Pauline Lepak* $200, to *Valentine Lepak* $200, to Salamonia Lepak $200, and to Peter Lepak $200, said sums are payable to respective parties when each is twenty-one years of age, without interest. Also to furnish said Theodore Lepak and wife with 6 cords of fire wood each year, also to allow them the free use of his team in case of need. In case said *John Lepak* should sell said premises he shall pay to said Theodore Lepak and wife the sum of one thousand dollars ($1,000), for which they agree to satisfy the above agreement."

Thereafter, in 1912, some trouble having apparently arisen between *John* and his mother, *John* conveyed the land to his sister-in-law, paid $1,000 to his parents, and received a quitclaim deed executed by them. This deed, so far as material here, read thus:

"Theodore Lepak and Rozalya (his wife) . . . in consideration of the sum of one thousand ($1,000) dollars to them duly paid, do hereby . . . quitclaim unto *John Lepak* . . . all the right, title, interest, claim, and demand which said parties of the first part have in the following described real estate: . . . This deed is given to satisfy a certain agreement made under date of June 23, 1906, between Theodore Lepak and wife, Rozalya, and *John Lepak*, in deed . . ." (here describing the deed hereinbefore quoted).

After these transactions were completed the sister-in-law deeded back to *John*.

The oldest four of those named as beneficiaries of the payments provided in the deed of 1906, having become of age and not having been paid, brought this suit to recover

the amounts alleged to be due. *John Lepak* answered that his parents promised to pay him for services or deed him their farm if he would continue to work for them after reaching twenty-one, that he had so continued to work for them, and that his services were worth more than $2,000, at which figure he valued the farm received by him at the time of the conveyance; that he had sold the premises and that his parents had fully satisfied the agreement (conditions) set forth in the deed; and that in any event one plaintiff was barred by the statute of limitations, she having become of age more than six years prior to the commencement of this action.

The scrivener of the deed of 1906 was permitted to testify, subject to defendants' objections, in regard to the $1,000 payment provided therein to be made in case the farm was sold, that the parents did not care to deal with strangers in getting the articles mentioned, that this was the understanding, and not that the children's interests should also be quitclaimed. Testimony relating to the quitclaim deed was introduced without objection by appellants, both that it was understood that the children's interests were thereby released, and the contrary.

The trial judge found as facts that the premises conveyed were then worth $2,200 and that personal property worth $300 was also delivered; that the total consideration for both land and personal property agreed to be paid was the payments of $200 each and the provisions to be furnished; that appellant *Lepak* and wife in form sold and conveyed the land, paid the $1,000 provided for, and received from his parents a quitclaim deed of their interest; that thereupon, in pursuance of the same transaction, the land was reconveyed to *John Lepak;* that these conveyances were made for the purpose of enabling appellant *Lepak* to borrow money upon the lands sufficient to pay the obligation of $1,000 to his parents; and that at the time of the transactions in 1912 it was understood and agreed between appel-

lant *Lepak* and his parents that the obligation to pay the several sums of $200. each should be unaffected by said transactions.    The judge made no findings with reference to an agreement of the parents to give *John* the farm in return for his services to them, and to his failure so to find appellants excepted.

The trial judge concluded that three of the plaintiffs were entitled to recover, the fourth being barred by the statute of limitations, and to have a lien upon the land as for unpaid purchase money.    From a judgment entered accordingly this appeal is taken.

The cause was submitted for the appellants on the brief of *A. L. Smongeski* of Stevens Point, and for the respondents on that of *Bird, Okoneski & Puchner* of Wausau.

JONES, J.    The conveyance relied on in this case is an interesting illustration of the agreements so often made for support between parents and a child.    If it were not for the last clause, in which satisfaction of the agreement is provided for in case *John* should sell the land and pay his parents $1,000, there would be no doubt but that he would be liable for the payments to the other children.    The case would then be governed by the rule in *Tweeddale v. Tweeddale,* 116 Wis. 517, 93 N. W. 440, and other cases.    Under that rule, the grantee in the deed having as part of the consideration agreed to pay sums of money to other persons, they would have become his creditors even though no consideration passed from them and whether they knew of the conveyance or not.    Having vested rights, their claims could not have been discharged without their consent.

It is claimed by counsel for appellants that there is no ambiguity in the conveyance, and that it provides for its own satisfaction by the sale of the farm and the payment of $1,000 to the parents.    It is also claimed by counsel for respondents that there is no ambiguity in the writing, but they arrive at an entirely different conclusion and construe

it to mean that it could not be satisfied without the consent of the other children.

Parol evidence was received as to the surrounding circumstances when this conveyance was made and of the understanding of the parties. There may be grave doubt whether such evidence was properly admitted, but in view of other evidence in the case it becomes unnecessary to decide this question.

Testimony was received that when the second conveyance, the quitclaim deed, was made from the parents to *John,* which purported to satisfy the former agreement, it was understood and agreed that the obligation to pay the several sums of money to the children was not intended to be released thereby. We have examined the record as well as the printed case and find that this testimony was not objected to by counsel for the appellants. In fact testimony on this subject was first offered by him. The trial court found that the above was the agreement and understanding at the time of making the quitclaim deed, and we see no reason to disturb the finding of the court.

*By the Court.*—Judgment affirmed.