NORTHWESTERN TELEGRAPH COMPANY, Appellant, vs. TAX COMMISSION, Respondent.

*March 9—June 29, 1933.*

For the appellant there was a brief by *Olwell & Brady* of Milwaukee, and oral argument by *Lawrence A. Olwell.*

For the respondent there was a brief by the *Attorney General* and *F. C. Seibold,* assistant attorney general, and oral argument by *Mr. Seibold.*

The following opinion was filed April 11, 1933:

FAIRCHILD, J. The terms of the lease referred to in the statement of facts are subjected to an analysis at this time in an income tax proceeding because telegraph companies first became subject to the Wisconsin income tax law in 1929 when ch. 448 repealed portions of the existing law exempting from income taxation the income of companies of this character. Sec. 10, ch. 529, Laws of 1929, is of the following effect: That persons made subject to the income tax law should make reports to the Tax Commission of their net incomes during the years 1927 and 1928, and thereafter should file annual returns of income at the time and in the manner provided by the statutes. It was further provided that the first assessment of income taxes under the amendment should be based upon the average of net incomes of the years 1927, 1928, and 1929. In accordance with these provisions the appellant filed income tax returns with the

Tax Commission in which it stated that its property was leased to the Western Union Telegraph Company and that the Northwestern had no income for any of the years in question. After an office audit the Tax Commission notified the appellant of an assessment of back income taxes. This assessment resulted from assessing and taxing against appellant as its income a portion of the payments made by the Western Union Telegraph Company directly to the stockholders of the Northwestern Telegraph Company, the portion being determined by the average of the ratios of lines of poles in Wisconsin to total lines of poles everywhere and miles of wires in Wisconsin to the total miles thereof of the appellant. On receiving notice of the assessment, appellant filed with the Tax Commission a request for a review of the assessment, and a stipulation of facts as outlined was entered into. The Tax Commission affirmed an assessment against the company of $3,658.67.

No objection is raised by appellant to the manner of the apportionment of the amount; the sole contention is that it had no income whatever during the years in question; that such revenue as there was was the income of individuals who are stockholders of appellant. So the inquiry is in relation to the ownership controlling the right and title to the rental paid to the stockholders by the Western Union Telegraph Company for the use of the property of appellant. These payments under the lease are to be made by the Western Union directly to the stockholders. Does this rental payable to individuals constitute taxable income of appellant?

A contract made in 1881 and still in force is as legally effective today as it was on the day it was made. Under the lease the Western Union Telegraph Company agreed to manage and conduct the business at its own expense; to maintain the property in good repair; to carry out the lessor's obligations under the contracts with the railroad

companies; to hold the lessor harmless on account of use or occupancy of the property; to cause to be made reports to public authorities required by law; to pay all taxes assessed or levied upon the leased property by any state or municipal authority; and to keep such property free and clear from all liens and incumbrances by reason of such taxes. A specification of details by which the general purpose of the lease was to be made effective was agreed upon; the rental involved in this appeal was to be paid by the Western Union and to be $100,000 the first year, with a *pro rata* increase each year until the amount reached $150,000 per year, for the year ending July 1, 1896, and thereafter $150,000 per year for the balance of the term of ninety-nine years. It was provided in the lease that the rent was to be paid "directly to the stockholders at the rate of four (4) per cent. per annum for the first year, four and a quarter (4¼) per cent. for the second year, and an increase thereon of one-eighth (⅛) of one per cent. for each succeeding year, so as to reach six (6) per cent. per annum for the sixteenth year, and continue thereafter at the rate of six (6) per cent. per annum during the term of this contract, such payments to be made on the first days of January and July of each year, commencing on the first day of January, 1882."

There is no question but that the arrangement between the lessor and lessee is a valid and binding agreement. A reading of the instrument leaves no room for question but that the appellant by a proper and lawful contract has leased its property to the Western Union Telegraph Company and bound the Western Union to pay the rentals therefor to appellant's stockholders for the term of the lease and thus has divested itself of any and all right and claim thereto. The contract obligation of the Western Union Telegraph Company to pay those persons specified is unquestionably upon an adequate and legal consideration. This particular lease

was held to be a lawful arrangement creating binding rights and obligations in *United States v. Western Union Tel. Co.* 50 Fed. (2d) 102. In Wisconsin the settled law is that where one person for a consideration moving to him agrees to pay certain amounts to a third person not a party to the contract, the relation of debtor and creditor is immediately created between the person so binding himself and such third person, and that the contractual right existing in favor of such third person cannot be altered without his consent. *Tweeddale v. Tweeddale,* 116 Wis. 517, 93 N. W. 440; *Fanning v. Murphy,* 126 Wis. 538, 105 N. W. 1056. The contract obligations of the Western Union to pay directly to the stockholders of the appellant created a property right in those individuals, and this right cannot be changed or modified by either or both the Western Union and the appellant without the agreement of those individuals. *Lepak v. Lepak,* 172 Wis. 617, 179 N. W. 777. Under the law appellant could not collect the payments provided to be made by the Western Union to the stockholders because the right to those payments is vested in the stockholders. The interest of the stockholders of the appellant is not merely derivative, but their interest is that of a third party beneficiary to a valid contract. *New York Central Securities Corp. v. United States,* 54 Fed. (2d) 122. The case just cited refers particularly to the law of New York, which is similar to that of Wisconsin.

The arrangement between the appellant and the Western Union, in which arrangement the individuals who are stockholders are third party beneficiaries, was made years before passage of the income tax law, and there is no occasion to treat it in any way as an evasion or an attempt to avoid taxation. It was merely in the interest of good business to save money for the stockholders by saving cost of administration. As suggested, a corporation is not a stranger to

its stockholders. But it is an entity separate and distinct from them. In 1881, when this lease was made and the rights of the different parties here involved were created, the property was owned by the corporation, and the corporation had a lawful right to make the arrangement that it did make divesting itself (not to the disadvantage of creditors) of future earnings for the benefit of its stockholders.

In the investigation to ascertain whether or not the appellant has an existing income we are bound to consider the circumstances of the situation in which the appellant now is by reason of the contract made in 1881. It cannot prevent the Western Union Telegraph Company from paying the rental to the stockholders, for, according to the agreement, they are entitled to the rent as provided in that agreement and they can maintain an action for its payment without reference to the appellant. With reference to this rental there is nothing of the element of reducing a subsisting debt or obligation of the appellant. This is not a case where there is a discharge by a third person of an obligation of the lessor. The appellant's situation remains the same. Were the legal obligations of the appellant being reduced by payments to creditors, very plainly there would exist income because each payment would operate to discharge a liability of the lessor to such third person. But that theory is inapplicable to such a situation as we have before us where payments made to third parties do not discharge or reduce a legal debt of the appellant and cannot in the nature of things confer any commensurate benefit upon the lessor. The rights of the stockholders here were created not against the appellant but against the Western Union Telegraph Company through the Western Union's promise to pay to the stockholders specified rentals. In the case of *United States v. Western Union Tel. Co.* 50 Fed. (2d) 102, the court said:

"The Northwestern Telegraph Company could not prevent the Western Union Telegraph Company from paying

the stockholders after its agreement. . . . The shareholders are entitled to their share of the rent as provided in the stock certificate and can maintain an action for its payment without joining the Northwestern Telegraph Company."

The control over the income is fixed in the stockholders of the appellant beyond its power to alter or interfere with. Mr. Justice HOLMES in *Corliss v. Bowers,* 281 U. S. 376, 50 Sup. Ct. 336, sets out the point by use of this illustration: "If a man directed his bank to pay over income as received to a servant or friend until further orders, no one would doubt that he could be taxed upon the amount so paid. It is answered that in that case he would have title, whereas here he did not. But from the point of view of taxation there would be no difference. *The title would merely mean a right to stop the payment before it took place."* In that circumstance it would be his income because it is under his control. It matters not so much where the title to the property is from which the income accrues; the test is control over that which is taxed. In the absence of an income tax law to be taken into consideration, and there was no such tax in this state in 1881, we agree with appellant's contention that when the person against whom the tax is sought to be laid has, by valid contractual arrangement made before the income tax law was enacted, put beyond his further command, beyond the right to stop payment, rentals to accrue, and has by solemn contract made the right to those rentals to exist in other persons, has vested property rights, then those rights cannot be changed or impaired without such third party's consent, and such rentals can be lawfully taxed as income only to those who beneficially own them, have control over them, possess the right to do with them as they please. *Hoeper v. Wis. Tax Comm.* 284 U. S. 206, 52 Sup. Ct. 120. If private property is to remain as an institution, rights under a contract must be beyond direct or indirect attack. The rights of individuals to the control over the income from the

rental of appellant's property were fixed under a contract, the legality and full protection of which was not questioned in any way for upwards of fifty years, and which complies with all requirements of a legally sufficient agreement. We therefore conclude that a valid and enforceable agreement was entered into July 1, 1881, divesting the appellant of all control over the income as it accrues and so long as it is paid out of the revenues arranged for in the lease; that the only incomes arising out of the circumstances presented by this case are incomes flowing to the stockholders as individuals. The appellant has no use of its property; it can have no use of the rentals during the life of the lease. The only way that rental can be taxed is as income of the individuals to whom the lessee is bound to pay, so long at least as no default occurs. The rent being by the agreement solely the property of the stockholders and belonging to no one else, it is difficult to see how the amount assessed can be raised by appellant.

It follows that the additional assessment against appellant is violative of the due process clause, sec. 1 of the Fourteenth amendment, and sec. 10 of art. I of the constitution of the United States.

*By the Court.*—Judgment reversed, and cause remanded with directions to vacate the assessment.

FOWLER and WICKHEM, JJ., dissent.

A motion for a rehearing was denied, with $25 costs, on June 29, 1933.