## JOLIET & C. R. CO. v. UNITED STATES.
### No. 7458.

Circuit Court of Appeals, Seventh Circuit.
March 10, 1941.

KERNER, Circuit Judge, dissenting.

———◇———

Silas H. Strawn, Frank H. Towner, and Arthur D. Welton, Jr., all of Chicago, Ill., for appellant.

J. Albert Woll, U. S. Atty., of Chicago, Ill., and Samuel O. Clark, Jr., Asst. Atty. Gen., for appellee.

Before SPARKS, MAJOR, and KERNER, Circuit Judges.

MAJOR, Circuit Judge.

This is an appeal from a judgment, entered May 13, 1940, disallowing a claim to recover income taxes paid for the years 1931 to 1934, inclusive, in the aggregate amount of $50,799.98, plus interest.

On January 1, 1864, the plaintiff, being the owner of thirty-seven miles of railroad between the cities of Joliet and Chicago, Illinois, entered into an indenture, under which it granted, demised and leased the railroad, together with all the appurtenances thereof, to the Chicago & Alton Railroad Company, its successors and assigns, without reservation, forever. The indenture contained no provision under which the tenure of the grantee therein could be terminated for failure to perform any of the covenants thereof, nor did it contain any provision for the payment of rent to the grantor. In consideration therefor, the Chicago & Alton Railroad Company obligated itself to guarantee and pay to the plaintiff's stockholders forever, in quarterly installments, an annual dividend of seven per cent per share on the par value of all outstanding capital stock. For the purpose of paying such dividend it further obligated itself to deposit with the United Trust Company of New York, funds sufficient therefor. In addition to these payments, the Chicago & Alton was required to pay any and all Federal taxes that might arise because of the payment of the dividend. A statement of these guaranteed payments was printed on all stock certificates issued by the plaintiff company. The number of outstanding shares was limited to fifteen thousand, having a par value of $100 per share, so that the annual payment required was $7 per share, or a total of $105,000 per year. This amount, beginning in 1864, was paid every year, including the years 1931 to 1934, inclusive. In addition to that, the Chicago & Alton Railroad Company and its successor, the Alton Railroad Company, paid the income taxes of the plaintiff in the amount of approximately $16,000 for each of the years involved. During these years, no resolutions declaring dividends were adopted by plaintiff's Board of Directors.

It is the contention of plaintiff that the indenture of 1864, being a lease in perpetuity and containing no defeasance clause, effectively conveyed to the grantee therein, its successors and assigns, all right, title and interest in the property. Therefore, the plaintiff, having divested itself of all of its property absolutely and, also, all control over and right to the payments made to the stockholders by the grantee, is not, and can not be, in receipt of income, actually or constructively.

The defendant, on the other hand, without conceding that the agreement was a conveyance in fee, argues that such a construction is immaterial inasmuch as the payments were received by the plaintiff's stockholders by virtue of their stock rights, and, consequently, such money is income constructively received by the plaintiff.

The indenture of 1864 is what is commonly called a lease in perpetuity. Such an instrument, however, can effectively convey a fee, if its terms are sufficiently broad to warrant such an interpretation. The interest conveyed will be determined by the habendum, for it is the purpose of this part of the instrument to define the nature and quality of the estate taken by the grantee. Jamaica Pond Aqueduct Corp. v. Chandler, 9 Allen 159, 91 Mass. 159. The habendum in the present instrument is as follows: "To have and to hold, the said above demised and leased premises, together with all the appurtenances thereof without reservation, * * * Forever, * * *". The grantor in this instrument has parted without reservation with all interest in the property. A reading of the instrument discloses that while it is called a lease, it has none of the characteristics thereof. There is no termination of the length of time the grantee is to hold the estate, no reservation of rent, no defeasance, and no right to reenter on default by the grantee. The importance of the lack of the defeasance clause is noted in State ex rel. Glenn v. Mississippi River Bridge Co., 134 Mo. 321, 35 S.W. 592, 596: "* * * Since the bridge company, as against the defendant railroad company, under the ruling in the case of State v. Mississippi River Bridge Co., 109 Mo. 253, 19 S.W. 421, is held to be the owner of the bridge, by reason of the defeasance clause in the lease from the bridge company to the defendant railroad company, by reason of a lack of a similar clause in the contract entered into between the Louisiana & Missouri River Railway Company and the bridge company, the defendant railroad

company, as the assignee of the Louisiana & Missouri River Railway Company, cannot now be considered to be the owner of the bridge * * *."

The indenture in the instant case ·was considered in Huck et al. v. Chicago & Alton Railroad Co., 86 Ill. 352, at page 354, where the court, said: "We think it very clear, from the corporate powers conferred by its charter, the terms of the leases, and the provisions of the revenue law referred to, that the Chicago and Alton Railroad Company is, for all purposes of taxation, at least, if not for all other purposes,' to be regarded as the owner of all the leased property. * * *" Thus, there is little, if any, question that the indenture of 1864 divested the plaintiff of all right, title and interest in the property, and vested a full and indefeasible title in the grantee, its successors and assigns. Chicago, Burlington & Quincy Railroad Co. v. Boyd, 118 Ill. 73, 7 N.E. 487.

The defendant does not seriously contend to the contrary, but points out that the parties treated the situation as one of a lessor-lessee relationship in that they entered the payments in question on the books as "income from lease of road" in one case, and "rent for lease of road" in the other. Such entries, however, can not be termed a voluntary admission on the part of the parties because made in accord with a classification established by the Interstate Commerce Commission. Sec. 20 of the Act to Regulate Commerce, 49 U.S.C.A. § .20. Under such circumstances it can not be said that their acts in this respect amount to an interpretation by the parties. The defendant further contends that the requirement that the grantee should, at its own cost and expense, keep the road in good repair and working order, is inconsistent with a fee conveyance. In view of what we have said, we are of the opinion that this isolated provision does not amount to a defeasance clause, and that it is not inconsistent with a fee grant.

Defendant further contends that it is immaterial if the indenture be construed as an outright conveyance of the property; that the payments made to the stockholders, whatever they be termed, are still income to the plaintiff because the payments are the consideration for the conveyance, and, consequently, are earned by the corporation. This contention, in our judgment, presents the real issue in controversy. The authorities relied upon by the defendant in

substantiation of this position are the so-called "constructive receipt" cases. In Gold & Stock Telegraph Co. v. Commissioner, 2 Cir., 83 F.2d 465,.the agreement was for a term of 99 years, and the taxpayer, in case of default in payment, had the option to terminate the agreement and to resume possession of the property. The property was to be surrendered in good condition at the end of the term, and the lessee agreed to pay, as an annual rental, six per cent on the capital stock of the taxpayer direct to the stockholders of the taxpayer. The court, on page 467 of 83 F.2d said: "* * * Had all future rentals been assigned by the lessor to the stockholders, the case would have been different from that before us. * * *"

The situation in United States v. Northwestern Telegraph Co., 2 Cir., 83 F.2d 468, and Pacific & Atlantic Telegraph Co. v. Commissioner, 2 Cir., 83 F.2d 469, is substantially similar, the leases being for terms of 99 years and 999 years, respectively. In the former case, the court, on page 469 of 83 F.2d, said: "* * * The liability is because the property, which belongs to whoever may be the stockholders as associates in corporate form, produces the income that passes to the recipients only as stockholders. * * *"

In Rensselaer & S. R. Co. v. Irwin, 2 Cir., 249 F. 726, the agreement was a lease for 500 years, in which the lessee agreed to pay as annual rental, interest to the bondholders, and dividends to the stockholders of the lessor, for the term of the lease. The court, on page 727 of 249 F., states: "* * * The lessee from 1871 down to the present time has continued to be in possession of the lessor's properties and franchises, * * *." The latter case, it is true, was cited with approval by the Supreme Court in Old Colony Trust Co. v. Commissioner, 279 U.S. 716, 729, 49 S.Ct. 499, 73 L.Ed. 918, but this approval was limited to the proposition that income taxes paid by a lessee for a lessor are income to the lessor. It throws no light on the question as to whether the income paid to the stockholders is income of the lessor corporation.

It is plainly evident in each of the cases relied upon by the defendant that title to the property producing the income remained in the lessor, and that the income was derived from rent paid by the lessee for the use of the property held by the lessor for the benefit of its stockholders.

In the instant situation, however, the plaintiff owns no property, is without power upon default to take over the property demised by the so-called lease, is not actually in receipt of income, and is without authority to require payment to it. Neither can the grantee discharge its obligation under the agreement by payment to the plaintiff—in fact the latter is without right to accept such payment.

Thus, by the terms of the indenture, the stockholders of plaintiff were made donee beneficiaries of the grantee's promise given in consideration of the conveyance; they may sue the grantee for the sums contracted to be paid them, and the plaintiff is without power to destroy their rights in this respect. Western Union Telegraph Co. v. Commissioner, 2 Cir., 68 F.2d 16. The corporations in the so-called "constructive receipt" cases were links in the income-receiving chain; the income was produced from the use of their property. In the instant case where plaintiff had long before divested itself of ownership, dominion and control of such property, we think the chain has been broken—in fact, the link has vanished. Here the promise of the grantee inured to the benefit of the stockholders by force of the agreement. Bay v. Williams, 112 Ill. 91, 1 N.E. 340, 54 Am.Rep. 209. The income is received by them as third party beneficiaries under the agreement, and not because of any further benefits that may be conferred upon them by the plaintiff. Their rights are fixed by contract rather than by their status as stockholders.

■ The indenture agreement of 1864 did two things—(1) it put the ownership of all the corporate assets, together with any income therefrom, irrevocably out of the hands of the plaintiff and into the hands of the grantee, and (2) it created a contractual obligation in favor of the shareholders, definite in amount, and in their right of enforcement. By this agreement, the shareholders succeeded to all the right which plaintiff might otherwise have had to this income, and therefore, it is their income and not that of the plaintiff, either actually or constructively.

The decision of the District Court is reversed.

KERNER, Circuit Judge (dissenting).

I regret that I am unable to concur in the opinion of my associates. Their opinion lays stress and is based entirely on the status of the stockholders as third party beneficiaries and the lack of control of the corporate taxpayer over the income. The opinion seems to ignore what in my opinion is a vital factor in the conclusion to be reached, the relationship between taxpayer and stockholders. At the most, that the stockholders may sue directly as third party beneficiaries on the promisor's undertaking, is of little consequence and emphasis thereon tends only to confuse the issue. Moreover, I do not believe that the doctrine of constructive receipt is governed solely by the "control of income" test, nor is it my impression that the federal courts have been imposing tax liability with regard to that test exclusively. Apparently the majority opinion indorses the statement in Northwestern Telegraph Co. v. Wisconsin Tax Commission, 212 Wis. 219, 248 N.W. 164, 166, that "the test is control over that which is taxed." I think the Wisconsin Supreme Court's view of constructive receipt is very narrow and has not won recognition by the federal courts, Gold & Stock Telegraph Co. v. Commissioner, 2 Cir., 83 F.2d 465, 467.

Corporation X transfers railroad property to Corporation Y in consideration of the payment of fixed amounts ("dividends") to the stockholders of Corporation X. Let us suppose a transfer (1) by lease for 999 years, (2) by perpetual lease lacking a defeasance clause, and (3) by perpetual lease containing a defeasance clause. In each case the question is whether the amounts so paid the stockholders, which X never actually receives, constitutes income to X. In cases (1) and (3) the reversion, separated as it is from the consideration, is of questionable value. In case (2) the reversion, if any, and separated as it is from the consideration, is of negligible value. In each case control by X over the income has been relinquished. See Concurring Opinion, Harwood v. Eaton, 2 Cir., 68 F.2d 12, 14. In each case X had control of the disposition of income and could have received it, but at the time of payment the stockholders were legally entitled to it and actually received it.

In case (1) it is conceded that X is the taxable person. Pacific & Atlantic Telegraph Co. v. Commissioner, 83 F.2d 469. In case (2) the majority opinion holds that X is not taxable. In case (3) I believe that the majority opinion would be compelled to hold X taxable. It follows that either the law conceded to be controlling

in (1) is not correct or that the law applied by the majority opinion in (2) is erroneous. Manifestly this is true, for the majority opinion turns the case mainly on the element of control over income and it is a fact that in the three cases corporate control over the income has been relinquished. It is my conclusion that the majority opinion has relied unduly on the presence or absence of a defeasance clause and hence has sacrificed substance at the altar of form.

Various theories have been advanced for the result reached in case (1) above. Rensselaer & S. R. R. Co. v. Irwin, D.C., 239 F. 739, affirmed 2 Cir., 249 F. 726, certiorari denied, 246 U.S. 671, 38 S.Ct. 424, 62 L.Ed. 931; Blalock v. Georgia Ry. & Elec. Co., 5 Cir., 246 F. 387; West End St. Ry. Co. v. Malley, 1 Cir., 246 F. 625, certiorari denied, 246 U.S. 671, 38 S.Ct. 423, 62 L.Ed. 931. The substance of the arguments used by the federal courts center around the relationship between the corporate taxpayer and its stockholders. The rationale of these opinions apply as well to cases (2) and (3) as to case (1) and the same result should be reached in each case. As stated in Gold & Stock Telegraph Co. v. Commissioner, 2 Cir., 83 F.2d 465, 467, "As the lessor corporation still exists to serve its stockholders for some purposes, we think it reasonable to treat it as a link in the income receiving chain which should not be disregarded as a taxpayer." Judge Learned Hand reasons that in cases such as these, there is a necessity for disregarding the corporate entity entirely and simply regarding payments to stockholders as payments to the corporation. Concurring Opinion, Harwood v. Eaton, 2 Cir., 68 F.2d 12, 14, 15. See also Gold and Stock Telegraph Co. case, 26 B.T.A. 914, 927; Kansas City, St. L. & C. R. R. Co. v. Commissioner, B.T.A. case promulgated November 6, 1940. Some of the courts above are also influenced in their opinions by the fear that a contrary view would open the door to future circumvention of the corporate income tax.

It is clear in our case that the rights of the stockholders to the payments of income spring from their status as members of the transferor corporation and that these payments could only have been made because the corporation was under an existing obligation to distribute earnings not required for its business. See also Raynolds v. Diamond Mills Paper Co., 69

N.J.Eq. 299, 60 A. 941; Dodge v. Ford Motor Co., 204 Mich. 459, 170 N.W. 668, 3 A.L.R. 413. I believe that either the payments to the stockholders should be treated as dividend distributions, or that in thus obtaining the discharge of an obligation definitely owing to its stockholders it received something of value which can properly be treated as income to it. In either event the income received by the stockholders should be treated as income of the corporation for purposes of the tax.

I believe that the judgment of the District Court should be affirmed.