## WESTERN UNION TELEGRAPH CO. v. COMMISSIONER OF INTERNAL REVENUE.

## COMMISSIONER OF INTERNAL REVENUE v. WESTERN UNION TELEGRAPH CO.

### No. 44.

Circuit Court of Appeals, Second Circuit.
Dec. 18, 1933.

Francis R. Stark, of New York City (Ralph H. Kimball, Francis N. Whitney, and Robert C. Barnett, all of New York City, of counsel), for the Western Union Telegraph Co.

Pat Malloy, Asst. Atty. Gen. (Sewall Key, Norman D. Keller, and F. Edward Mitchell, Sp. Assts. to Atty. Gen., of counsel), for the Commissioner.

Before L. HAND, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

SWAN, Circuit Judge.

Purporting to act pursuant to section 280 of the Revenue Act of 1926 (26 USCA § 1069 and note), the Commissioner of Internal Revenue assessed against the Western Union Telegraph Company (hereinafter referred to as Western Union) as transferee of Gold & Stock Telegraph Company (hereinafter referred to as G. & S. Co.) and of Pacific & Atlantic Telegraph Company (hereinafter referred to as P. & A. Co.) liability in respect to income taxes of the respective transferors for the year 1926. Deficiency notices were mailed to Western Union, and it appealed to the United States Board of Tax Appeals, where the two proceedings were consolidated for hearing. The opinion is reported in 27 B. T. A. 265. The Board entered orders determining Western Union's transferee liability as $20,700.36 in respect to the G. & S. Co. tax, and $8,237.70 in respect to the P. & A. Co. tax. Both parties have petitioned for review; Western Union contending that no liability should have been found against it, the Commissioner contending that liability should have been imposed in the amounts of $40,500 and $10,800, respectively, these sums being the taxes due from the transferors on the basis of the annual rentals stipulated for under long-term leases which they had respectively given to Western Union as lessee.

The G. & S. Co. lease was executed in

December, 1881. All the properties of the lessor were leased to Western Union for a term of 99 years, beginning January 1, 1882, and the lessee agreed to pay an annual rental, payable quarterly, of $300,000, being a sum equal to $6 per share on the 50,000 shares (par value $100 each) of G. & S. Co. stock. The lease contained a provision "authorizing and requesting" payments of rental to be made pro rata to stockholders of record on the books of G. & S. Co. at the date when payment was due; but, within a month after the lease was executed, Western Union indorsed on every G. & S. Co. stock certificate its "guarantee" of the quarterly payment of 1½ per cent. upon the par value of the stock represented thereby, subject to the conditions of the lease. Under the law of New York, this gave the certificate holder a direct right of action against Western Union for a proportionate share of the quarterly rent payments. Bowers v. Interborough R. T. Co., 121 Misc. 250, 201 N. Y. S. 198, affirmed 208 App. Div. 768, 202 N. Y. S. 917; Peabody v. Interborough R. T. Co., 124 Misc. 801, 209 N. Y. S. 376, affirmed 213 App. Div. 857, 209 N. Y. S. 893, affirmed 240 N. Y. 708, 148 N. E. 768; Pennsylvania Steel Co. v. N. Y. City Ry. Co., 198 F. 721, 762 (C. C. A. 2). It may be assumed that the certificates were indorsed with the lessor's knowledge and consent, in view of the relations between the two companies, and we think that thereafter the rights of the parties to the lease were the same as though it had originally contained a direct covenant by the lessee to pay the rent to the lessor's shareholders, as did the lease of the P. & A. Co. hereafter to be mentioned. Both leases are, therefore, to be considered on the same basis: the shareholders of the lessor are donee beneficiaries of the lessee's promise; they may sue Western Union for the sums agreed to be paid to them; the lessor has no right to require rent to be paid to itself, and could not by arrangement with the lessee destroy the rights of the shareholders without their consent. See cases above cited; also, N. Y. Central Securities Corp. v. United States, 54 F.(2d) 122, 126 (D. C. S. D. N. Y.); Gifford v. Corrigan, 117 N. Y. 257, 22 N. E. 756, 6 L. R. A. 610, 15 Am. St. Rep. 508; Butler v. State Mut. Life Assur. Co., 55 Hun, 296, 8 N. Y. S. 411, affirmed 125 N. Y. 769, 27 N. E. 409; N. Y. Ins. Co. v. Aitkin, 125 N. Y. 660, 26 N. E. 732; Am. L. Inst. Restatement of Contracts, § 142. It is true that both lessors reserved the right of re-entry for breach of covenant by the lessee, but, as no default had occurred, this provision does not affect the legal relations as above outlined.

During the years 1926 and 1927, 20,524 shares of G. & S. Co. stock were owned by others than Western Union, and to these shareholders it paid $123,144 in each of said years. The remaining shares were owned by Western Union itself, and no payment was made upon them, but 3,920 shares were treated as being held in a voluntary sinking fund and $23,520, being $6 per share on said 3,920 shares, was added to the $123,144 paid shareholders to make a total of $146,664, which G. & S. Co. reported, under protest, as its net income for 1926. Upon the income so returned, an income tax of $19,799.64 was assessed against G. & S. Co. In 1928 the Commissioner assessed against it a deficiency of $20,-700.36, based on the inclusion in income for 1926 of the remainder of the $300,000 of rent which had not been reported in its return because Western Union made no payment on the shares it held itself. No part of the original assessment or of the deficiency has been paid, and warrants for distraint have been returned unsatisfied. For the amount of the said deficiency, $20,700.36, transferee liability has been found against Western Union.

The facts respecting liability as to the P. & A. Co. tax are similar. This company leased its properties to Western Union under a lease for 999 years beginning January 1, 1874. It stipulated for an annual rental of $80,000 to be paid in semiannual installments to the lessor's shareholders ratably and in proportion to the number of shares held by each; the total number of shares (of the par value of $25 each) being 80,000. During the years 1926 and 1927, 58,877 of the shares were owned by Western Union itself, and no payment was made upon them; 20,980 shares were owned by others to whom payment was made at the rate of $1 per share per year; and the ownership of the remaining 143 shares was unknown, and no accruals were made in respect to the $143 per year attributable to these shares. Under protest, P. & A. Co. filed a return reporting its net income for 1926 as $20,980, and upon this a tax of $2,-562.30 was assessed. Subsequently a deficiency was determined on the theory that the stipulated rental of $80,000 should have been returned as income of the lessor for 1926. Efforts proved unavailing to collect from P. & A. Co. either the original assessment or the deficiency assessment. Thereupon transferee liability was asserted against Western Union, and has been imposed in the sum of $8,237.70.

■ To support the position of the Commissioner, two propositions must be maintained: (1) That the lessors were respectively liable

for income taxes for 1926, upon amounts of rent payable according to the terms of the leases direct to their shareholders; and (2) that Western Union is liable as a transferee within the meaning of section 280 of the Revenue Act of 1926 for payment of the 1926 income taxes of its lessors. Most of the argument has been directed to the first proposition and has revolved about the correctness of this court's decision in Rensselaer & S. R. Co. v. Irwin, 249 F. 726, which held that rental payments made to shareholders of the lessor corporation pursuant to a covenant in the lease constituted income to the lessor for purposes of taxation. Some doubt as to its correctness was intimated in United States v. Western Union Tel. Co., 50 F.(2d) 102 (C. C. A. 2). The taxpayer now asks us frankly to overrule it, and cites Northwestern Tel. Co. v. Wisconsin Tax Comm. (Wis.) 248 N. W. 164, as a direct holding to the contrary. The Commissioner, on the other hand, argues with equal earnestness that the Rensselaer decision should be reaffirmed, and relies particularly upon Old Colony Trust Co. v. Commissioner, 279 U. S. 716, 729, 49 S. Ct. 499, 73 L. Ed. 918; United States v. Boston & M. R. Co., 279 U. S. 732, 735, 49 S. Ct. 505, 73 L. Ed. 929; Burnet v. Wells, 289 U. S. 670, 677, 53 S. Ct. 761, 77 L. Ed. 1439; West End St. Ry. Co. v. Malley, 246 F. 625 (C. C. A. 1); Blalock v. Georgia Ry. & El. Co., 246 F. 387 (C. C. A. 5); and Am. Tel. & Cable Co. v. United States, 61 Ct. Cl. 326. Many, if not all, of these authorities are distinguishable; but we do not find it necessary to enter upon a discussion of them, nor either to affirm or deny the doctrine of the Rensselaer decision, for the case at bar can be disposed of upon the second proposition, even if it be assumed that rent paid to the lessor's shareholders was taxable income to the lessor.

Section 280 of the Revenue Act of 1926 provided the United States with a new and summary remedy for enforcing "the existing 'liability, at law or in equity'" of a transferee of property of a taxpayer. Phillips v. Commissioner, 283 U. S. 589, 594, 51 S. Ct. 608, 610, 75 L. Ed. 1289. The Board of Tax Appeals held that "there is a liability in equity on the part of this stockholder to pay these taxes of the corporations from its retained share of the payments which have become due since the obligation to pay the taxes accrued." 27 B. T. A. 265, 277. This seems to assume that Western Union as lessee owed to itself (in equity) the rentals provided to be paid on the shares which it had bought and holds, and that it "retained" 1927 rentals after the lessor's obligations to pay 1926 taxes accrued. The assumption appears to us unfounded. The shareholders, as donee beneficiaries of the lessee's covenant to pay them rent, had, severally, causes of action against Western Union. When Western Union itself acquired shares, the obligation in respect to that stock was extinguished. Western Union cannot be at once both obligor and obligee; legal relations presuppose two juristic persons. Pro tanto the rent stipulated for in the lease was reduced, and the lessor received (on the assumption that rent paid or owed to shareholders is its income) a less amount of income. Only by the purest fictions can it be said that the lessee was liable to itself as a shareholder, or that it was a transferee of the lessor's income to the extent that the annual rental was reduced by its ownership of shares.

It is by no means clear from the argument of the Commissioner what property of the lessors he contends was transferred to Western Union, or on what basis he asserts a liability at law or in equity to exist. His brief asserts that Western Union "has received corporate property to the extent that as a stockholder it has used the properties of the lessors without paying the agreed rentals and is, therefore, liable as a transferee." But those properties were transferred to it when the leases were executed and possession taken under them years ago. The leases were not made for the purpose of avoiding income taxes or of defrauding future creditors of the lessors. The liability of the lessee for use of the leased properties is only such as the terms of the leases impose and, as already demonstrated, its ownership of part of the lessors' shares reduces the agreed rentals so long as its ownership continues. So far as it receives income from the leased properties, it must include such income in its own income tax return, and its deduction on account of rent will be reduced by so much as its ownership of the lessors' shares has lessened its annual payments of rental; but no tenable theory has been advanced upon which it can be held liable as a transferee of the lessors.

Accordingly, upon the Western Union's petition, the orders of the Board must be reversed and the deficiencies expunged; the petition of the Commissioner to increase the deficiencies must be denied and his petition dismissed. So ordered.