**HARWOOD v. EATON, Collector of Internal Revenue.**

No. 51.

Circuit Court of Appeals, Second Circuit.

Dec. 18, 1933.

John Buckley, U. S. Atty., of Hartford, Conn. (George H. Cohen, Asst. U. S. Atty., of Hartford, Conn., and E. Barrett Prettyman, Gen. Counsel, Bureau of Internal Revenue, and S. E. Blackham, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., of counsel), for appellant.

Henry F. Parmelee, of New Haven, Conn. (John H. Weir, of New Haven, Conn., of counsel), for appellee.

Before L. HAND, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

SWAN, Circuit Judge.

In 1890 the Empire & Bay States Telegraph Company leased its properties to the Western Union Telegraph Company for a term of 99 years and at a rental of $12,000 per annum payable quarterly. The lease provided that, if the lessor should retire its bonds and reduce its capital stock to $300,000, the lessee would indorse upon each of the certificates of stock of the lessor a covenant to pay the annual rental directly to said stockholders pro rata. The conditions were performed by the lessor, and the indorsement was made by the lessee during the year 1890, and ever since the lessee has paid the rent directly to the lessor's stockholders. During the year 1926 the plaintiff owned 200 shares of the lessor's stock upon which he received from the lessee the sum of $800. This sum he included in his income tax return for the year 1926, and he paid the tax assessed thereon. Subsequently the Commissioner of Internal Revenue assessed an income tax of $1,350 against the lessor upon the theory that rental payments to its stockholders constituted income to it, and, after exhausting efforts to collect the tax from it, assessed against the plaintiff as a transferee the full amount of $800 received by him in 1926 plus interest thereon in the sum of $186.10. This amount, $986.10, the plaintiff paid to the defendant on February 13, 1931. A claim for refund having been filed without result, the plaintiff then brought this suit. He recovered judgment for the sum paid with interest thereon from the date of payment.

This appeal presents a situation very similar to that considered in Western Union Telegraph Company v. Commissioner (C. C. A.) 68 F.(2d) 16, the opinion in which is handed down herewith. It is controlled by similar principles. Here, as there, we assume that the lessor corporation was subject to income tax in respect to the rental payments made direct to its stockholders in 1926. Such taxes the United States may collect from the corporation's property, if any can be reached; but it may not collect them from the corporation's stockholders merely as such. In general, the rule is that the corporation is an entity distinct from its stockholders for tax purposes. Dalton v. Bowers, 287 U. S. 404, 410, 53 S. Ct. 205, 77 L. Ed. 389. Hence a stockholder can be compelled to pay a tax assessed against his corporation only as might any third person who had in some way incurred liability therefor. We pass, therefore, to a consideration of the question of the plaintiff's liability as a "transferee" under section 280 of the Revenue Act of 1926 (26 USCA § 1069 and note).

In Hatch v. Morosco Holding Co., 50 F. (2d) 138, we expressed the view that section 280 imposes no new obligation upon the transferee of property of a taxpayer, but permits collection from him, by a summary procedure, to the extent that the municipal law makes him liable at law or in equity for the transferor's taxes. We think this is the necessary implication from the opinion of the Supreme Court in Phillips v. Commissioner, 283 U. S. 589, at page 594, 51 S. Ct. 608, 75 L. Ed.. 1289, where the statute is referred to as providing "a new remedy for enforcing the existing 'liability at law or in equity,'" despite the statement, on page 602 of 283 U. S., 51 S. Ct. 608, 610, that there is no occasion to decide whether the right of the United States to follow transferred assets is limited by any state laws. We adhere, therefore, to the view already expressed. Indeed, the appellant has not challenged it.

Under the municipal law we can find no basis for imposing liability upon the plaintiff to account to the United States as a creditor of the Empire Company for the payments received by him from Western Union during 1926. It is argued that, when the plaintiff received the $800 payment, he received property of his corporation. Consequently the appellant attempts to predicate liability upon the so-called trust fund theory,

relying upon such cases as United States v. Fairall, 16 F.(2d) 328 (D. C. S. D. N. Y.), Hatch v. Morosco Holding Co. (C. C. A.) 50 F.(2d) 138, and Phillips v. Commissioner, 283 U. S. 589, 51 S. Ct. 608, 75 L. Ed. 1289. They do not support his argument, for in each of those cases assets of the corporation were distributed to a stockholder at a time when the corporation's liability for taxes already existed. As pointed out in the accompanying opinion in the Western Union Case, the New York law views payments made under the present circumstances as payments by the obligee under a contract for the benefit of a third person. Certainly the corporation could not require the plaintiff to account for the sum received. Upon what theory does a creditor of the corporation stand on higher ground? The payment was not a dividend paid by the lessor to its stockholder; no money of the Empire Company was distributed to the plaintiff in 1926. Until paid over, the money belonged to Western Union, and, upon payment, it became the plaintiff's money, thereby extinguishing his personal right of action against Western Union. It is true that the consideration for his right of action against Western Union was furnished by the lessor's demise. But that was made years before the lessor's liability for taxes arose. The arrangement to have rent paid direct to the stockholders was not a fraudulent conveyance; it did not defraud existing creditors, nor was it intended to defraud future creditors of the lessor, for none was in view; nor was it devised as a scheme to defeat the collection of future income taxes. Even a voluntary disposal of its assets by a corporation, if made without fraudulent intent, cannot be questioned by a subsequent creditor. Graham v. Railroad Co., 102 U. S. 148, 26 L. Ed. 106. It is one thing to say that the rents paid to shareholders may be deemed income of the corporation for purposes of determining the tax assessable against it; it is quite another to say that the receipt of such rental payments makes the stockholder liable to the corporation's creditors. Unless the plaintiff would be liable to any creditor of the Empire Company, for example, to a stock transfer agent whose services in 1926 were not paid for by the corporation, he was not liable to the United States for the taxes in question. If a transfer of the lessor's property can be deemed to have been made to him at any time, it was back in 1890 upon the creation of his rights as a third party beneficiary of the lessee's covenant. No recognized legal principle has been suggested by which a sub-

sequent creditor of the lessor can reach such rights. We therefore agree with the District Court that no "transferee" liability was established. Accordingly the judgment is affirmed.

L. HAND, Circuit Judge (concurring).

If we must insist that for taxing purposes a corporation is a juristic person distinct from its shareholders, I should find difficulty in holding that the lessor had a taxable income here. Moreover, I agree that Lucas v. Earl, 281 U. S. 111, 50 S. Ct. 241, 74 L. Ed. 731, Burnet v. Leininger, 285 U. S. 136, 52 S. Ct. 345, 76 L. Ed. 665, and Parker v. Routzahn, 56 F.(2d) 730 (C. C. A. 6), do not cover the point, for in these the assignor's future performance was a condition upon the promisor's obligation, whose payment was the "income." That is the only difference I can see between such cases and Hall v. Burnet, 60 App. D. C. 332, 54 F.(2d) 443, 83 A. L. R. 86, for instance, in which the obligations were absolute at the time of assignment, though payable in the future. When such contracts are assigned, the assignor is not liable for the tax. U. S. v. Looney, 29 F.(2d) 884 (C. C. A. 5); Nelson v. Ferguson, 56 F.(2d) 121 (C. C. A. 3). Indeed, where the assignor's continued performance is a condition, I have some difficulty in thinking of the income as remaining within the assignor's control, merely because he can defeat the payments by defaulting; but I accept that explanation for lack of any better distinction. At any rate, as I have said, the doctrine of Lucas v. Earl does not rule this situation, because the lessor here had nothing further to do; the consideration for the rent was the conveyance of the term, and the successive payments were absolutely due thereafter, unless the lessor re-entered.

However, a corporation is not distinct from its shareholders in such a situation as this. Every one agrees that the rent is somebody's income and may be taxed; the objection is to taxing it at the rate which Congress has laid down for corporations, and collecting all of it from one shareholder, so far as he has received payment from the lessee. But a corporation, however completely it is a juristic person, is also an association of persons who have chosen the corporate form for their convenience; and it is upon the basis of that convenience that Congress has imposed upon them collectively a higher rate. Although here the rent passed directly to the associates, the shareholders, instead of through their common treasury, nevertheless they continued to enjoy the advantages of the corporate form; the payments reached them only be-

cause they remained members of the association; they will no longer receive them when they leave the group; the original bargain by which the rents were reserved was made with them and by them as such associates. Moreover, and this is the main thing, if they are not pro hac vice identified with the corporation, they will escape the rate which is levied on the group for the very reason that it is a group, and uses the form for whose use the rate is prescribed. This being the setting, we do no violence to language, if we say that the payments, though made directly to each shareholder, were payments to the associates as a group; and that they are identified with the corporation, so far as it must be considered as having an independent personality, a vexed question at best. The statute itself (section 2 (a) (2) Revenue Act 1926, 26 USCA § 1262 (a) (2), by including "associations," uses the word "corporation" somewhat loosely; we may by implication reverse the definition, though there be a formal incorporation, because the opposite view nullifies the purpose of the act. There could not be much doubt about it, if the transaction had been openly devised to avoid the higher rates. If so, it can make no difference that it occurred at a time when such a motive did not, and could not, exist. The pattern is exactly the same, and the purpose of a taxpayer to avoid taxation ought never to be relevant, if the transaction is not fictitious.

This conclusion is much fortified by a series of departmental rulings which antedate several re-enactments of the income tax acts. Article 102, Regulations 33; article 546 of Regulations 45; article 547, Regulations 62, 65 and 69; article 70, Regulations 64. Further, while the Supreme Court has refused to consider the point, a number of decisions in the lower courts, unanimous I think, accord with my view. Anderson v. Morris & Essex R. R., 216 F. 83 (C. C. A. 2); West End Street Ry. v. Malley, 246 F. 625 (C. C. A. 1); Blalock v. Georgia Ry. & Elec. Co., 246 F. 387 (C. C. A. 5); Rensselaer & Saratoga R. R. v. Irwin, 249 F. 726 (C. C. A. 2); Northern Ry. Co. of N. J. v. Lowe, 250 F. 856 (C. C. A. 2); American Tel. & Cable Co. v. U. S., 61 Ct. Cl. 326.

It is another question whether the shareholders are transferees under section 280 (a) (1) of the Revenue Act of 1926, 26 USCA § 1069 (a) (1). The section gives an administrative remedy for "the liability, at law or in equity, of a transferee of property of a taxpayer." I have some doubt whether this includes only liabilities existing by virtue of the state law, as my brothers believe, and at any rate I think it unnecessary to declare so here; the point was expressly reserved in Phillips v. Commissioner, 283 U. S. 589, 602, 51 S. Ct. 608, 75 L. Ed. 1289. The liability imposed by the section must be that of a transferee of the taxpayer. Here there was no transfer from the taxpayer, the lessor, unless we go back to the date of the lease itself. I might be content to treat that as a transfer, though it was made at the same time when the right to the rents was created. But the notion on which the lessor is considered as receiving any income at all is, as I have tried to show, that payments to the group are payments to the corporation; if the rents were transferred originally this could not be so. Therefore, either there was no income or there was no transfer; both there could not be. The Treasury may of course levy on the lessor's reversion, though it is presumably worthless. Theoretically perhaps it might levy on the rents received, treating them as assets of the taxpayer, which by hypothesis they are, if it had any income. This has not been tried; the shareholders have been taxed; for the liability assessed against them under section 280 (a) (1) is indeed a tax. United States v. Updike, 281 U. S. 489, 50 S. Ct. 367, 74 L. Ed. 984. There must be some warrant of law for such a tax, and there is none unless they are transferees, which as I have said would cut the ground from under the tax against the lessor, itself a condition upon the derivative liability. What the fate should be, under the laws as they stand, of such an attempt to levy upon the rents as assets of the taxpayer, I need not say. For these reasons I concur.