## UNITED STATES v. NORTHWESTERN TELEGRAPH CO.

### Nos. 3632, 3641.

District Court, D. Connecticut.
Jan. 31, 1935.

Frank J. Wideman, Asst. Atty. Gen., Andrew D. Sharpe and S. E. Blackham, Sp. Assts. to Atty. Gen., and Robert P. Butler, U. S. Atty., and George H. Cohen, Asst. U. S. Atty., both of Hartford, Conn., for the United States.

Shipman & Goodwin, of Hartford, Conn. (Arthur L. Shipman, of Hartford, Conn., of counsel), for defendant.

HINCKS, District Judge.

These are companion cases brought by the government for the recovery of income taxes.

The complaint in No. 3641 is in three counts; in the first the government seeks judgment for income tax assessed against the defendant for the taxable year 1927; in the second for the taxable year 1928; and in the third count for the taxable year 1929; and in No. 3632 judgment is sought for income tax for the taxable year 1930.

### Finding of Facts.

1. The defendant, at all times material to this controversy, is and has been a corporation organized under the laws of Wisconsin, and having a place of business at Hartford, Conn., where its treasurer resides, upon whom process in civil actions within this district may be served.

2. On May 7, 1881, the defendant entered into a written lease with the Western Union Telegraph Company, a corporation of New York, copy of which in evidence as Defendant's Exhibit No. 1, is hereby made a part hereof as fully as if set forth at length in these findings.

3. Pursuant to said lease and prior to January 1, 1917, Western Union duly indorsed upon all of the outstanding certificates of shares of stock of the Northwestern Telegraph Company, and upon all certificates issued in transfer or exchange therefor, its separate contract with each shareholder of the Northwestern Telegraph Company, whereby it agreed to make to each holder of said stock the payments required by it to be made under the terms of paragraph II of article 2 of Exhibit A; said contract being as follows:

"In accordance with the provisions of the contract within named The Western Union Telegraph Company will pay to the owner and holder of the within certificate, the several dividends therein described, at the time and place therein stated, during the period that the said contract shall continue in force.

"Western Union Telegraph Company,
"By —————

"Secretary."

4. For each of the years 1927–1930, inclusive, the Western Union Telegraph Company has paid the sums provided for in the lease in accordance with the provisions thereof. For each of said years the sum of $150,000 was paid direct to the stockholders and the sum of $67,500 was paid direct to bondholders as interest on the first mortgage bonds.

5. At all times material to this controversy, the only property owned by the defendant herein other than such rights of property as were reserved to it under said lease, Defendant's Exhibit 1, were 18 shares of its own treasury stock. Except for payments from Western Union on account of such treasury stock, aggregating $54 annually for every year material to this controversy, defendant has received no income

unless it be that the payments made by Western Union to defendant's bondholders and/or stockholders constitute income to the defendant.

6. For the taxable years 1927 to 1930, inclusive, the defendant, under protest, duly filed income tax returns as follows:

"Gross Income.

| | | |
|---|---|---|
| "Dividends on stock of Domestic Corporations, | | $54.00 |
| "Other income: | | |
| "(a) Payment under lease to Western Union Telegraph Company, | | 217,497.00 |
| "(b) directly to bondholders, interest on bonds, | 67,500.00 | |
| "(c) directly to stockholders, dividends on stocks, | 149,997.00 | |
| "Total income, | | 217,551.00 |

"Deductions.

| | | |
|---|---|---|
| "Interest, | 67,500.00 | |
| "Dividends, | 54.00 | |
| "Total deductions, | | 67,554.00 |
| "Net income, | | $149,997.00." |

7. Upon said tax returns, the Commissioner of Internal Revenue assessed against the defendant income taxes as follows:

On April 3, 1928, for the taxable year 1927, $20,249.60.

On March 27, 1929, for the taxable year 1928, $17,999.64.

On May 23, 1930, for the taxable year 1929, $16,499.67.

On April 20, 1931, for the taxable year 1930, $17,999.64.

8. The defendant, notwithstanding due demand, has never paid any of said taxes.

### Comment.

■ With respect to the payments made by Western Union direct to defendant's bondholders, each such payment discharged a debt due from the defendant. To be sure, the funds with which the payments were made did not pass through the defendant's treasury. Nevertheless, the payments served to discharge a primary and continuing obligation of the defendant to its creditors and, as such, constituted "gain" or "income" to the defendant within the meaning of the Revenue Act of 1926, §§ 213, and 233, 26 USCA §§ 954, 985, and of the corresponding section of the Act of 1928, § 22, 26 USCA § 2022. U. S. v. Boston & Maine R. R., 279 U. S. 732, 49 S. Ct. 505, 73 L. Ed. 929, Old Colony Trust Co. v. Commissioner of Internal Revenue, 279 U. S. 716, 49 S. Ct. 499, 73 L. Ed. 918, and Rensselaer & S. R. Co. v. Irwin (C. C. A.) 249 F. 726, 727. This conclusion I consider not inconsistent with the holdings in Harwood v. Eaton (C. C. A.) 68 F.(2d) 12, certiorari denied 292 U. S. 636, 54 S. Ct. 715, 78 L. Ed. 1489, and Western Union Tel. Co. v. Commissioner (C. C. A.) 68 F.(2d) 16.

■ With respect to payments made by Western Union direct to defendant's stockholders, the case stands otherwise. For in this circuit at least, it was established in the case of Harwood v. Eaton, supra, that in a situation such as this payments made by Western Union directly to a stockholder come to him not as a transferee of the lessor, but rather as a donee-beneficiary under the contract of lease. As such, he has a direct right of enforcement against Western Union (the lessee), and no such right against the defendant (the lessor). It necessarily follows that under the doctrine of this case the stockholder is subject to normal tax upon all such payments.

The government, however, contends that notwithstanding the stockholder's liability to normal tax upon these payments, the same payments are taxable against the lessor under the holding of Rensselaer & S. R. Co. v. Irwin, supra. The government is correct, I think, to this extent; that the case cited supports its contention. There the court said:

"The rent is the property of the plaintiff, and remains such, though by the terms of the lease paid out to others, whose rights are derived through it. While the rent is a debt of the lessee to the lessor, it is, as between the lessor and its stockholders, the lessor's income, out of which the dividends, if any, are to be paid.

"The application of the rent under the lease is a mere labor-saving device, the effect being exactly the same as if it be paid to the lessor and by it paid out as far as necessary to bondholders for interest, and the surplus in dividends to its stockholders. The description of the fixed sum to be paid by the lessee of 8 per cent. to the lessor's stockholders as a dividend shows that the payment is made as agent of the lessor."

This quotation seems to me to indicate a fundamental conflict with the holding of the Harwood and Western Union Cases recently decided and just above cited. For, if as now established, the stockholder is a donee-beneficiary, it necessarily follows that the stipulated payments to stockholders under the lease are not debts due to the defend-

ant (lessor) and that Western Union is not the "agent" of the lessor in making these stipulated payments. If the stockholder is a donee-beneficiary, the direct application of rent under the lease is more than "a mere labor-saving device"; and the effect is not exactly as though the payments were wholly made to the lessor and "by it paid out as far as necessary to bondholders for interest, and the surplus in dividends to its stockholders." For under the terms of the lease, bondholders and stockholders have the same right to enforce payments due from Western Union, although as pointed out above bondholders, as creditors of the defendant, have in addition a direct remedy against the defendant, and stockholders are not relegated to the surplus remaining after the payment in full of bondholders.

To be sure, the Rensselaer Case has never been expressly overruled. But it was doubted in U. S. v. Western Union Tel. Co. (C. C. A.) 50 F.(2d) 102. And in Western Union Tel. Co. v. Commissioner (C. C. A.) 68 F.(2d) 16, which was decided without resort to the authority of Rensselaer, the doubt was repeated and the point passed with the observation that "many, if not all of" the authorities urged by the government in support of the Rensselaer doctrine were distinguishable. And so the unhappy nisi prius judge finds himself confronted with two decisions, both in this circuit, which he is unable to reconcile. In such a predicament, I elect to apply the doctrine of Harwood v. Eaton, and of Western Union Tel. Co. v. Commissioner (C. C. A.) 68 F.(2d) 16, as containing reasoning in which I can find no break and which, as it seems to me, more accords with the trend of the law relating to third-party contracts. And I depart from the doctrine of the Rensselaer Case with the less misgiving because in so far as I can deduce from the report of that case the distinction between the rights of the bondholders and those of the stockholders as against the lessor corporation was not brought to the court's attention. Certainly the court seemed not to recognize the stockholders' position as donee-beneficiaries, nor the absence of a debtor-creditor relationship between the lessor and its stockholders.

To be sure, the Rensselaer Case, together with several others to the same effect, was cited with apparent approval in Old Colony Trust Co. v. Commissioner of Internal Revenue, 279 U. S. 716, 49 S. Ct. 499, 73 L. Ed. 918. But that case held only that a payment by taxpayer's debtor (the promisor) direct to taxpayer's creditor (the third party beneficiary) constituted the receipt of income by the taxpayer (the promisee) and the approval which the Supreme Court accords to the cases cited must be limited to the holding of the case. It will be observed that I apply that holding to payments made by Western Union (the promisor herein) to the bondholders (the third party beneficiaries herein) who are creditors of the lessor (the promisee herein).

Again the government urges Article 547 of Regulations 69 and Article 70 of Regulations 74 (applicable to the Revenue Acts of 1926 and 1928, respectively) in support of its contention. To be sure, these regulations, or earlier regulations to the same effect, have been expressly approved in United States v. Boston & Maine R. R., 279 U. S. 732, 49 S. Ct. 505, 73 L. Ed. 929. But in that case, again, the court was concerned with payments made by a promisor direct to a creditor of the taxpayer (promisee), and the approval there accorded to the regulations must be deemed limited to the holding of the case.

■ Nor can it be maintained, by resort to reason as distinguished from precedent, that stockholders, though lacking the status of creditors of the corporation, yet have such a beneficial interest in the corporate assets that payments received by them from Western Union constitute income to the corporation as fully as payments to bondholders which serve to discharge liquidated debts of the corporation. For the stockholders' rights with respect to the corporate assets, in so far as such rights are cognizable either in law or in equity, are neither discharged nor affected by the payments received. By assenting to the contract of demise, they accepted a right to look to Western Union for recurring payments in lieu of their equitable right to insist that the defendant itself should put the corporate assets to productive use for their gain. Thereafter the only rights of the stockholders respecting the corporate assets were such as pertained to the reversion; and their reversionary rights are not affected by the payments from Western Union.

■ Moreover, in the text of the applicable Revenue Acts are provisions which militate against the construction which the government asks me to put upon sections 213 and 233 (a) of the Revenue Act of 1926 (26 USCA §§ 954, 985 (a), wherein "gross income" is defined. Thus in section 219 (h), Revenue Act of 1926, 26 USCA § 960 note, it

is expressly provided that the income from certain trusts which is applicable to the payment of premiums of insurance policies on the life of the grantor who created the trust shall be included in computing the grantor's income for tax purposes. But the contract creating such a trust, and indeed any contract of life insurance to which the grantor of the trust is a party, are in their very nature contracts for the benefit of third persons. The very fact that Congress considered that an express statutory provision was necessary to make such income taxable against the taxpayer (who in such cases is the promisee in a contract for the benefit of a third person) suggests a legislative contemplation that in the absence of such provision payments to third party beneficiaries are not taxable as constituting income of such a contract-promisee. It follows that the Revenue Acts ought not to be construed with respect to contracts made for the benefit of third persons to include in the taxable income of the promisee payments made under the contract to beneficiaries who are not creditors of the promisee, except where express statutory authority is found therefor as in section 219 (h).

To be sure, it has been held in Burnet v. Wells, 289 U. S. 670, 53 S. Ct. 761, 764, 77 L. Ed. 1439, that said section 219 (h), 26 USCA § 960 note, is constitutional. But there is nothing in that decision which suggests that the court would have construed the assessment there sustained as falling within the scope of sections 213 and 233 (26 USCA §§ 954, 985) if it had not been for the express provisions of section 219 (h).

Nor does my conclusion as to the meaning of the act rest upon a "refinement of title" which, to be sure, may alone suffice when, as here, the question is "one of construction and nothing more." Burnet v. Wells, supra. It is in harmony with the basic fabric of our tax law. For it is a common feature of the successive Revenue Acts that income produced by corporate activity is taxable in the first instance against the corporation producing the income. Thereafter, dividends declared out of surplus income in the hands of stockholders are subjected to surtax. This is fundamental under the legislative policy of taxation.

Under the holding herein, the income produced by defendant's demised property is taxed against Western Union, thus making its proper contribution to the tax exacted upon corporate incomes. And thereafter, the stipulated payments are subjected to normal tax against the individual stockholders, instead of surtax only, as would have been the case but for the corporate demise.

If, however, the government's contention were sustained, the income produced by the demised property would first be subjected to corporate income tax in the hands of Western Union, and again to corporate income tax in the hands of the defendant, and finally to surtax in the hands of stockholders.

### Conclusions of Law.

1. That plaintiff's motion for judgment on the pleadings must be denied.

2. That for each of the taxable years in question the payments of $67,500 to defendant's bondholders constituted gross income to the defendant, against which it was entitled to a corresponding deduction for interest on business indebtedness.

3. That for each of the taxable years in question the payments of $150,000 to defendant's stockholders did not constitute gross income to the defendant.

4. That for each of the taxable years in question, the net income of the defendant did not exceed $54.

5. That the defendant is entitled to judgment, with costs.