**GOLD & STOCK TELEGRAPH CO. v. COMMISSIONER OF INTERNAL REVENUE.**

No. 135.

Circuit Court of Appeals, Second Circuit.

May 11, 1936.

Francis R. Stark and Robert C. Barnett, both of New York City (Francis R. Stark, of New York City, of counsel), for petitioner.

Frank J. Wideman, Asst. Atty. Gen., and Sewall Key and Morton K. Rothschild, Sp. Assts. to Atty. Gen., for respondent.

Before MANTON, AUGUSTUS N. HAND, and CHASE, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge.

The taxpayer, Gold & Stock Telegraph Company, on January 1, 1882, leased its entire property to the Western Union Telegraph Company. Western Union agreed to pay an annual rental of $300,000 payable quarterly, being a sum equal to 6 per cent. per annum on the taxpayer's capital stock. The taxpayer authorized and requested Western Union to pay the rental by pro rata distributions to the several stockholders of the taxpayer as they appeared on the books at the time of payment and agreed to accept such distributions in full satisfaction of the rental. There was also an additional rental of $2,500 per annum, to be used by the officers of the corporation which was to be maintained. In case of default in payment, the taxpayer had the option to terminate the agreement and resume possession of its property. The property was to be surrendered in good condition upon termination of the agreement. Western Union agreed to pay any taxes lawfully imposed upon the property and to keep the same clear from all encumbrances arising from tax, assessment, or judgment liens, or from any act of Western Union during the term of the agreement. It was also to assume and pay the principal and interest of certain bonds of the taxpayer and could require the issuance of other bonds under the same arrangement.

Pursuant to the lease Western Union took possession of the taxpayer's telegraph systems and all its property and assets as lessee, and has continued to operate and maintain the same for its own profit and at its own cost. It has paid the amounts provided in the lease to defray administration expenses of the taxpayer and has paid the remaining rentals direct to the stockholders other than itself, but has made no payments to any one in respect of the stock which it personally held, which was a majority of the taxpayer's stock during the years 1920 and 1921. Shortly after January 4, 1882, Western Union caused to be indorsed on each certificate of stock of the taxpayer a guaranty that it would pay the quarterly dividend aggregating 6 per cent. per annum. During the taxable years in question the taxpayer had no financial transactions except the receipt of the cost of maintaining its corporate organization

from Western Union and had no debts other than the claims of the United States for income and excess profits.

The question on this appeal is whether the rent directly payable to the stockholders by the Western Union constituted income to the taxpayer under sections 213(a) and 233(a) of the Revenue Acts of 1918 and 1921 (40 Stat. 1065, 1077, 42 Stat. 238, 254), and the applicable Treasury Regulations. The Board of Tax Appeals held that it was such income and determined the deficiencies accordingly.

In United States v. Western Union Telegraph Co., 50 F.(2d) 102, where the Western Union had leased the property of the Northwestern Telegraph Company, we held that the Commissioner could not enforce a lien for income taxes upon rents due from the Western Union to the stockholders. In Western Union Tel. Co. v. Commissioner, 68 F.(2d) 16, we held that the Commissioner could not impose a liability upon the Western Union as transferee for income taxes on the rentals under the lease of the Gold & Stock Telegraph Company which is before us in the present case. In Harwood v. Eaton, 68 F.(2d) 12, we held, in regard to a similar lease, that the stockholders were not liable for taxes as mere transferees under the statute imposing taxes in case of certain transfers. Under the foregoing decisions the question whether rentals payable by the lessee directly to the stockholders of the lessor were taxable against the lessor as its income was left open and must now be answered.

In Rensselaer & S. R. Co. v. Irwin (C.C.A.) 249 F. 726, the taxpayer corporation had leased its property for 500 years to a lessee which had agreed to pay as rent the amount of 8 per cent. upon the par value of its stock directly to the holders thereof, and in addition interest on the bonds of the lessor and $1,000 per year for corporate maintenance. We held that the lessor was liable for taxes on the payments by the lessee to the stockholders as well as on the payments for interest. Judge Hough dissented on the ground that the stockholders acquired separate rights to recover and sue for the payments to be made to them which would not be discharged by payment to the lessor. The Supreme Court denied a writ of certiorari. 246 U.S. 671, 38 S.Ct. 424, 62 L.Ed. 931. We followed the foregoing decision in Northern R. Co.

of New Jersey v. Lowe, 250 F. 856, and the Court of Appeals of the First Circuit reached a like result by a divided court in West End St. Ry. Co. v. Malley, 246 F. 625, certiorari denied 246 U.S. 671, 38 S.Ct. 423, 62 L.Ed. 931. American Telegraph & Cable Co. v. United States, 61 Ct.Cl. 326, certiorari denied 271 U.S. 660, 46 S. Ct. 473, 70 L.Ed. 1137, was another decision to the same effect.

An interesting discussion of a situation closely resembling that before us may be found in Blalock v. Georgia Ry. & Electric Co. (C.C.A.) 246 F. 387, 388. There the applicability of the Corporation Tax Act of August 5, 1909, to the income of a lessor under a lease whereby the lessee was to pay "quarterly sums or dividends" of a named per cent. of the lessor's capital stock "to the persons registered as holders of the * * * shares on the tenth day next preceding each day for such payment" was considered. Judge Walker, writing for the Court of Appeals of the Fifth Circuit, said:

"We do not think that what was done amounted to an assignment by the lessor to those who were its stockholders when the lease was made of proportionate shares of the net rent to accrue in the future. If there had been such an assignment, any assignee would have had the power of disposing of his share of the rent without disposing of his share as a stockholder in the rented property. It plainly appears that this was not contemplated. By the explicit terms of the lease the installments of rent were made payable 'to the persons registered as holders of said shares on the tenth day next preceding each day for such payment.' There was no assignment having the effect of a severance or separation of the beneficial ownership of the rent to accrue from the beneficial ownership of the rented property. The beneficial ownership of both continued in those who at any given time were the stockholders of the lessor corporation. * * *

"The law, by permitting the association to be made a corporation, enables the associated members to secure for themselves the benefits of defined and limited responsibility, and at the same time the execution of the purposes for which they are associated by means of an artificial being, changes in the membership of which cause no break in the continuity of its existence and are without effect upon its

capacity to act, within the scope of the powers conferred by its charter, as a natural person. * * *

"Is net rent paid for the use of corporate property made any the less corporate income received by the corporation, within the meaning of the provision, * * * by the circumstance that, pursuant to a provision of the corporation's lease under which the rent is payable, it is paid to the corporation's then registered stockholders in amounts proportionate to their respective holdings of stock, instead of in a lump sum to the corporation itself? We think not."

Judge Learned Hand adopted much the same line of reasoning in his concurring opinion in Harwood v. Eaton, 68 F.(2d) 12 (C.C.A.2). In that case the majority of the court did not deal with the liability of the lessor for income taxes, but limited the opinion to the question whether the statute relating to transferees covered the claim asserted, in order not to pass upon the difficult matters now before us which were not at that time necessarily involved.

Not only has the Supreme Court on three occasions declined to review the decisions we have referred to, holding the lessor subject to taxes upon income derived from its property though directly payable by the lessee to the lessor's stockholders, but all five decisions were cited by the Supreme Court with approval in Old Colony Trust Co. v. Commissioner, 279 U.S. 716, 729, 49 S.Ct. 499, 73 L.Ed. 918. See, also, United States v. Boston & M. R. Co., 279 U.S. 732, 736, 49 S.Ct. 505, 73 L.Ed. 929. Cf. Anderson v. Morris & E. R. Co., 216 F. 83, 90 (C.C.A.2).

█ In our opinion a lessor and its stockholders cannot retain a corporate form of association without being subject to the taxes which are naturally involved in such an arrangement. Had all future rentals been assigned by the lessor to the stockholders, the case would have been different from that before us. Here the retention of the status of stockholder beneficiaries with all the rights incident to that status of sharing, in proportion to their holdings of stock, in the rentals which the property of their corporation yielded, subjected them to the ordinary incidents of stockholders receiving payments from the earnings of their corporation and subjected the lessor corporation to taxes upon the income of the property of the group as a corporation.

In Northwestern Telegraph Company v. Wisconsin Tax Commission, 212 Wis. 219, 248 N.W. 164, the Supreme Court of Wisconsin reached a different conclusion from the one we have come to here. Its decision was placed upon the ground that the rights of the stockholders in the rentals were fixed by agreement of the parties and beyond the control of the lessor corporation. While that is true, the stockholders remained in receipt of income which came to them, though, under the agreement, because they were not merely promisees or assignees but stockholders still availing themselves of the corporation to hold title on their behalf. Should they sell their stock, they would lose their right to share in the rentals. As the lessor corporation still exists to serve its stockholders for some purposes, we think it reasonable to treat it as a link in the income receiving chain which should not be disregarded as a taxpayer. There is no sufficient ground for abating taxes upon such groups because of the agreement that the rentals shall be paid directly to the stockholders when such rentals are derived from the use of the corporate property, and all the authorities in the United States courts have sustained a tax against the lessor based thereon.

█ A further reason for reaching the above conclusion is that the Regulations (Art. 102, Treasury Regulations 33; Art. 546 of Treasury Regulations 45, p. 12; Art. 547 of Treasury Regulations 62, p. 13) have for some years held that rent paid by a lessee directly to the stockholders' lessor constituted taxable income to the latter. The first of these regulations is cited with approval in connection with a reference to the decision in West End St. Railway Co. v. Malley (C.C.A.) 246 F. 625, in United States v. Boston & M. R. Co., 279 U.S. 732, 735, 49 S.Ct. 505, 73 L.Ed. 929.

The provisions of section 233(a) and section 213(a) of the Revenue Act of 1918, to which Art. 546 of Treasury Regulations 45 refers, have been re-enacted in the later Revenue Acts. See section 233 (a) and section 213(a) of the Revenue Acts of 1921, 1924, and 1926, 42 Stat. 254, 238, 43 Stat. 283, 267, 44 Stat. 41, 23, and section 22(a) of the Revenue Acts of 1928 (26 U.S.C.A. § 22 and note) 1932 and 1934 (26 U.S.C.A. § 22(a). These subse-

quent re-enactments indicate that the regulations have received legislative sanction. Brewster v. Gage, 280 U.S. 327, 337, 50 S. Ct. 115, 74 L.Ed. 457. They plainly are valid. Burnet v. Wells, 289 U.S. 670, 53 S.Ct. 761, 77 L.Ed. 1439; Douglas v. Willcuts, 296 U.S. 1, 56 S.Ct. 59, 80 L.Ed. ——, 101 A.L.R. 391.

■ It is argued that the rentals payable upon the large stockholdings of the Western Union itself should not be taxed as income of the lessor because the rentals to that extent were not paid out, but we can see no merit in the contention. The Western Union, like every other stockholder of the lessor, chose to acquire an interest in the corporate association. Rent accrued to it as a stockholder of the corporation and, whether it chose to pay it to itself or not, its rights were as truly worked out through the corporation as those of the other stockholders. The property of the corporation of which it was a beneficiary yielded a return, and that corporation cannot avoid taxes because the guaranty could not be enforced by the Western Union against itself. Our remarks in Western Union Tel. Co. v. Commissioner, 68 F.(2d) 16, 18, related to the liability of the Western Union as transferee upon rents due upon stock which it had acquired in the lessor corporation, but did not relate to the imposition of taxes against the lessor corporation.

· The order of the Board of Tax Appeals is affirmed.