## COMMISSIONER OF INTERNAL REVENUE v. WESTERN UNION TELEGRAPH CO.

## SAME v. HARTFORD FIRE INS. CO.

Nos. 57, 141.

Circuit Court of Appeals, Second Circuit.

March 23, 1944.

Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key, Samuel H. Levy, and Paul R. Russell, Sp. Assts. to the Atty. Gen., for Commissioner of Internal Revenue.

Francis R. Stark and Clarence W. Roberts, both of New York City, and Paul E. Lesh, of Washington, D. C., for respondent Western Union Telegraph Co.

Ernest W. McCormick and Barclay Robinson, both of Hartford, Conn., for respondent Hartford Fire Ins. Co.

Before SWAN, AUGUSTUS N. HAND, and FRANK, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge.

The Commissioner has assessed against the respondents herein as transferees of certain corporations of which they were stockholders liability in respect to unpaid income taxes of the respective transferor corporations. Liability is predicated upon Section 311 of the Revenue Acts of 1928 and 1932, 26 U.S.C.A. Int.Rev.Code, § 311.

Several years before income taxes had been authorized by the Sixteenth Amendment the taxpayers primarily liable leased all of their properties for terms ranging from 99 to 999 years. Western Union was lessee of six of the original taxpayers, and American District Telegraph Company was lessee of the other original taxpayer. The respective instruments provided that for the properties leased the lessee was to guarantee and pay an amount equivalent to a specified percentage on the capital stock of the lessors and that these rentals should be distributed directly by the lessees among the stockholders of the lessors in proportion to stock holdings. Western Union was the lessee of the entire properties of six of the original taxpayers, and it was also a stockholder of those companies. Western Union, during each of the taxable years, paid the stockholders of its lessors, other than itself, the amounts which they were entitled to receive under the leases, but made no payment on account of the proportion of the rental which would come to it as a stockholder of the lessor. It claimed on its own income tax returns for the taxable years, as deductions for rent, the full amount which it had agreed to pay under the leases, and returned as dividends received from domestic corporations those portions of the total rental obligations which were allocable to the stock in the lessors owned by it. In the case of the Hartford Fire Insurance Company the properties of the taxpayer primarily liable were leased to the American District Telegraph Company; and Hartford received as stockholder of the original taxpayer its proportionate part of the amount agreed to be paid by the lessee as rental and returned as dividends received by it such proportionate amount.

The income taxes were assessed and warrants of distraint were issued against the lessors in each case, but these warrants were returned unsatisfied, and the taxes have not been collected. The Commissioner now seeks to collect from the respondents-stockholders herein, as transferees of the lessors, under Section 311 of the Acts of 1928 and 1932. That section, so far as relevant, reads as follows:

"Transferred assets

"(a) Method of collection. The amounts of the following liabilities shall, except as hereinafter in this section provided, be assessed, collected, and paid in the same manner and subject to the same provisions and limitations as in the case of a deficiency in a tax imposed by this title (including the provisions in case of delinquency in payment after notice and demand, the provisions authorizing distraint and proceedings in court for collection, and the provisions prohibiting claims and suits for refunds):

"(1) Transferees. The liability, at law or in equity, of a transferee of property of a taxpayer, in respect of the tax (including interest, additional amounts, and additions to the tax provided by law) imposed upon the taxpayer by this title.

\* \* \* \* \*

"Any such liability may be either as to the amount of tax shown on the return or as to any deficiency in tax.

\* \* \* \* \*

"(f) Definition of 'transferee'. As used in this section, the term 'transferee' includes heir, legatee, devisee, and distributee."

It has been settled by recent decisions that a corporation is taxable upon income constructively received by it when rentals due to it as lessor are paid directly to its stockholders. United States v. Joliet & Chicago R. Co., 315 U.S. 44, 62 S.Ct. 442, 86 L.Ed. 658. It is also settled that this rule is applicable in respect of rentals accruing upon stock of the lessor owned by the lessee. Gold & Stock Tel. Co. v. Commissioner, 2 Cir., 83 F.2d 465, certiorari denied 299 U.S. 564, 57 S.Ct. 26, 81 L.Ed. 415; Pacific & Atlantic Tel. Co. v. Commissioner, 2 Cir., 83 F.2d 469, certiorari denied 299 U.S. 564, 57 S.Ct. 26, 81 L.Ed. 415. We have heretofore held that taxes found to be due by the lessor under such circumstances, when it has no property with which to pay its income tax obligations, may be collected by means of an application by the government for an order enjoining the payment of the rental dividends to the lessor's stockholders until the

776

collector shall have been able to satisfy the lessor's delinquent taxes therefrom. United States v. Warren R. Co., 2 Cir., 127 F.2d 134; United States v. Morris & Essex R. R. Co., 2 Cir., 135 F.2d 711. In the present proceedings the government seeks to employ an additional remedy for the collection of the lessor's income tax by following distributions of income paid by the lessee to the lessor's stockholders as transferees.

In Harwood v. Eaton, 2 Cir., 68 F.2d 12, and Western Union Tel. Co. v. Commissioner, 2 Cir., 68 F.2d 16, we held that persons in the situation of the respondents in the cases at bar were not liable as transferees. Two of the judges in Harwood v. Eaton, supra (of whom the writer was one) so held where lessee and stockholder were different persons on the ground that the payment was not a dividend. Judge Swan said (at page 14 of 68 F.2d): "The arrangement to have rent paid direct to the stockholders was not a fraudulent conveyance; it did not defraud existing creditors, nor was it intended to defraud future creditors of the lessor, for none was in view; nor was it devised as a scheme to defeat the collection of future income taxes." Judge Learned Hand agreed that the stockholders were not transferees, but rested his conclusion on the ground that the lessor corporation was not a "juristic person" separate from its stockholders, and that the tax laid upon the lessor was really laid upon the group composing it, so that there were not two persons to effect a transfer. In United States v. Morris & Essex R. R., 2 Cir., 135 F.2d 711, he reiterated the view that the corporation and stockholders were not distinct under a similar type of lease, though there the claim of liability as transferee was not involved. In Western Union Tel. Co. v. Commissioner, 2 Cir., 68 F.2d 16, we held that no liability as transferee existed, where the same person was lessee and stockholder of the lessor, because under the terms of the lease the stockholder had a direct right of action against the lessee for a proportionate share of the rent payments and in such circumstances under the New York law the lessor could not require any part of the rent to be paid to itself or by arrangement destroy the rights of its shareholders without their consent. Gifford v. Corrigan, 117 N.Y. 257, 22 N.E. 756, 6 L.R.A. 610, 15 Am.St.Rep. 508; Restatement Contracts § 142. We also held

in Western Union Tel. Co. v. Commissioner, 2 Cir., 68 F.2d 12, that the lessee, Western Union, was not liable as transferee because, when it acquired shares in the lessor, its obligation to pay rent became extinguished pro tanto. In both Harwood v. Eaton, 2 Cir., 68 F.2d 12, and Western Union Tel. Co. v. Commissioner, 2 Cir., 68 F.2d 16, it was held that the only obligation of the lessee was a contract obligation running to the stockholders of the lessor as donee-beneficiaries and under the New York law, which was thought to control the relations of the parties, the government, as creditor of the lessor, had no claim against a stockholder, as transferee of lessor, because the lessor never received or transferred any part of the rent since the rent belonged to the stockholders of the lessor solely in their own right.

In our opinion much of the reasoning in Harwood v. Eaton, Western Union Tel. Co. v. Commissioner, and United States v. Morris & Essex R. R. Co., supra, cannot be supported in view of the theory upon which the Supreme Court proceeded in United States v. Joliet & Chicago R. Co., 315 U.S. 44, 62 S.Ct. 442, 86 L.Ed. 658. In the court below a majority of the Court of Appeals of the Seventh Circuit had held[1] that the lessor was not liable for income taxes upon rentals under a lease whereby the lessee had agreed to pay the rent directly to the stockholders of the lessor. The decision was placed on the ground that because of the direct contractual rights which ran to the stockholders the lessor had lost control over the rentals and consequently was not subject to a tax thereon. Judge Kerner filed a dissenting opinion in which he said: "either the payments to the stockholders should be treated as dividend distributions, or * * * in thus obtaining the discharge of an obligation definitely owing to its stockholders it received something of value which can properly be treated as income to it. In either event the income received by the stockholders should be treated as income for purposes of the tax." The Supreme Court reversed the judgment of the Circuit Court of Appeals and subjected the lessor to income taxes upon the rentals distributed to its stockholders. It said [315 U.S. 44, 62 S.Ct. 445, 86 L.Ed. 658]:

"The relationship between respondent and its shareholders is an abiding one. They obtain the dividend payments because

1 118 F.2d 174, 178.

of their status as shareholders. All questions of the rights of creditors aside, there can be no doubt that a corporation may normally distribute its assets among its stockholders. When it undertakes to do so, its act is nonetheless a corporate act though its shareholders receive new contractual rights enforceable by them alone against the transferee. That is to say their rights to receive the proceeds on the disposal of corporate assets are strictly derivative in origin. The fact that the consideration is made distributable to them directly over a long period of time rather than in one lump payment does not alter the character of those rights. In each case their claims to the proceeds flow from the corporation and are measured by the stake which they have in it. * * * The fact that the corporation may remain in existence only to maintain a stock transfer book is immaterial. The umbilical cord between it and its shareholders has not been cut. The distribution made is in performance of the obligation owed by the corporation to them."

We expressed much the same idea in Gold & Stock Telegraph Co. v. Commissioner, 2 Cir., 83 F.2d at page 467, where we said, in dealing with a similar situation:

"As the lessor corporation still exists to serve its stockholders for some purposes, we think it reasonable to treat it as a link in the income receiving chain which should not be disregarded as a taxpayer. There is no sufficient ground for abating taxes upon such groups because of the agreement that the rentals shall be paid directly to the stockholders when such rentals are derived from the use of the corporate property, and all the authorities in the United States courts have sustained a tax against the lessor based thereon."

█ It seems to us that the mode of treatment of the relations between the lessor and its stockholder in United States v. Joliet & Chicago R. Co., supra, precludes us from regarding them as a single group as they were considered in United States v. Morris & Essex R. R. Co., supra, and in the concurring opinion in Harwood v. Eaton, supra, and requires us to hold that the lessor not only exists as an entity independent of its stockholders, but that it constructively receives rentals from the lessee and in effect distributes them as annual dividends to its shareholders. Cf. United States v. Warren R. Co., 2 Cir., 127 F.2d 134, 138.

It is true that in Harwood v. Eaton, 2 Cir., 68 F.2d 12, 14, we held that the distribution to the stockholders, made as the result of pre-existing contracts entered into when the lessor had no creditors and the passage of an income tax was not as yet in contemplation was not a fraudulent conveyance. But under the theory of the Joliet decision the rights of the stockholders were those of distributees of current dividends. The situation was the same as though the directors in the first year of the lease had passed a resolution that the rents each year thereafter should be paid to the shareholders without further order of the directors. Under the arrangement, each year after the income tax law went into effect, the lessor distributed its earnings as dividends without paying its current rent indebtedness for income taxes. If such be the correct rationale in view of the Joliet decision, there was a fraudulent conveyance each year, which the government could have set aside in equity—and this in spite of the entire good faith of the parties involved.

█ The contention is made that there was no transfer because, under the state law, all rights to the shares of rent distributed by the lessee were vested in the lessor's shareholders. In Phillips v. Commissioner, 283 U.S. 589, 51 S.Ct. 608, 75 L.Ed. 1289, it was held that stockholders who received the assets of a dissolved corporation were under the state law subject to the income taxes of the corporation as transferees. But the Supreme Court reserved the general question (at page 602 of 283 U.S., at page 613 of 51 S.Ct., 75 L.Ed. 1289) "whether the right of the United States to follow transferred assets is limited by * * * state laws." Although we held in Harwood v. Eaton that the state law governed the relations of the parties and precluded recovery against the stockholders as transferees, this was because we regarded their rights as independent of the corporation of which they were shareholders and indeed eliminated it as a factor in the situation. But in United States v. Joliet & Chicago R. Co., 315 U.S. 44, 62 S.Ct. 442, 86 L.Ed. 658, the Supreme Court held that in respect to liability for federal income taxes the rights of stockholders like those here are essentially not independent of their corporation but derivative. We think the question whether the stockholders of the lessors are transferees within the meaning

of Section 311 of the Revenue Acts of 1928 and 1932 is as fully a question of federal law as the question whether the proceeds derived from assigned wages, commissions or coupons payable in the future are income taxable against the assignor within the Revenue Acts. Helvering v. Horst, 311 U.S. 112, 61 S.Ct. 144, 85 L.Ed. 75, 131 A.L.R. 655; Helvering v. Eubank, 311 U.S. 122, 61 S.Ct. 149, 85 L.Ed. 81. Cf. Lyeth v. Hoey, 305 U.S. 188, 59 S.Ct. 155, 83 L.Ed. 119, 119 A.L.R. 410; Lucas v. Earl, 281 U.S. 111, 50 S.Ct. 241, 74 L.Ed. 731. This seems to us implicit in the theory of the Joliet decision. See also Higgins v. Smith, 308 U.S. 473, 60 S.Ct. 355, 84 L.Ed. 406, and Moline Properties v. Commissioner, 319 U.S. 436, 63 S.Ct. 1132, 87 L.Ed. 1499.

In view of the relations of the lessors to their stockholders as defined in the Joliet case, we hold that in the cases before us there were transfers of income by the former to their stockholders which were in derogation of the rights of the creditors of the lessors under the state law. Inasmuch as the relations of the lessors to their stockholders under leases such as we have here had not been defined by the Supreme Court at the time when we decided Harwood v. Eaton, as they were later in United States v. Joliet & Chicago R. Co., 315 U.S. 44, 62 S.Ct. 442, 86 L.Ed. 658, our decision in Harwood v. Eaton does not preclude us from holding that the word "transferee" embraces the respondents and other distributees of the rentals.

■ The respondent Western Union further relies on the defense of res judicata in respect to its liability for taxes on distribution under the Gold Stock Telegraph Company and the Pacific and Atlantic Telegraph Company leases. This contention is sound. In Western Union v. Commissioner, 2 Cir., 68 F.2d 16, we determined the principal questions now before us so far as related to those leases. The only questions not involved were the amounts of the income taxes for the particular years, namely 1931, 1932, and 1933, now under consideration, for the former decision related to the income taxes of the lessors for the year 1926. Although commentators have urged a relaxation of the rule of res judicata in tax cases (see Griswold, Res Judicata in Tax Cases, 40 Yale L. J. 1320; Paul and Zimet, Res Judicata in Federal Taxation, Studies in Federal Taxation (1938); 33 Columbia Law Rev. 1404), we think that Tait v. Western Maryland R. Co., 289 U.S. 620, 53 S.Ct. 706, 77 L.Ed. 1405, is controlling here. There a former adjudication with respect to taxes for an earlier year was held to work an estoppel by judgment in respect to the computation of income tax liability for a later year, where the statute remained the same. Although, as we pointed out in Stoddard v. Commissioner, 2 Cir., 76 F.2d 141, the doctrine does not apply where events which must determine taxability are not identical from year to year [Henricksen v. Seward, 9 Cir., 135 F.2d 986; Engineer's Club v. United States, 42 F. Supp. 182, 95, Ct.Cl. 42, Campana Corp. v. Harrison, 7 Cir., 135 F.2d 334], yet if the matters in dispute arise out of the same facts and historical events that appeared in the record of the former decision, the opinion in Tait v. Western Maryland Ry. Co., supra, requires us to apply the doctrine of res judicata.

■ It is argued on behalf of the government that the doctrine of res judicata cannot apply because there has been a change in the law since our decision in Western Union v. Commissioner, 2 Cir., 68 F.2d 16. In that case we held that the Western Union was not a transferee, whereas we are now holding that it is one. In support of the contention that there is no estoppel by judgment because of our earlier decision the government especially relies on a dictum in Henricksen v. Seward, 9 Cir., 135 F.2d 986, 988, 989. That dictum rested on the holding in Blair v. Com'r, 300 U.S. 5, 57 S.Ct. 330, 81 L.Ed. 465, that changes of state law will prevent the application of res judicata to issues otherwise similar to those involved in a former litigation between the same parties. But the doctrine of Blair v. Commissioner can have no application to cases where supervening federal decisions have changed the law. State law and the content of state-created rights are, for the federal courts, questions of fact. Accordingly, the decision of Blair v. Commissioner cannot be regarded as effecting the rule of Tait v. Western Maryland Ry. Co., 289 U.S. 620, 53 S.Ct. 706, 77 L.Ed. 1405, in respect to facts and historical events that are identical.

For the foregoing reasons, in the Western Union case the determination of the Tax Court is affirmed as to the rentals derived under the leases of the Gold Stock

Telegraph Company and the Pacific and Atlantic Telegraph Company but otherwise is reversed and remanded to the Tax Court in order that taxes may be computed in accordance with the views expressed in this opinion. In the Hartford Fire Insurance Company case the determination of the Tax Court is similarly reversed and remanded.

SWAN, Circuit Judge (concurring).

Personally I should prefer to adhere to our former decisions on transferee liability, in each of which certiorari was denied by the Supreme Court, 292 U.S. 636, 54 S.Ct. 715, 78 L.Ed. 1489, and to have the correction made by that august tribunal, if correction is needed; but as my brothers think the cases must be overruled in the light of United States v. Joliet & Chicago R. Co., 315 U.S. 44, 62 S.Ct. 442, 86 L.Ed. 658, I am content to concur.