**UNITED STATES of America,
Appellant,**

v.

**Dorothy B. TRUAX, Individually and as Administratrix of the Estate of Layton E. Truax, Appellee.**

**No. 15356.**

United States Court of Appeals
Fifth Circuit.

June 2, 1955.

John J. Kelley, Jr., Ellis N. Slack, A. F. Prescott, Sp. Assts. to Atty. Gen., H. Brian Holland, Asst. Atty. Gen., William C. Calhoun, U. S. Atty., Augusta, Ga., for appellant.

Green B. Everett, Reidsville, Ga., T. Ross Sharpe, Lyons, Ga., Sharpe & Layne, Lyons, Ga., for appellee.

Before HUTCHESON, Chief Judge, and TUTTLE and JONES, Circuit Judges.

TUTTLE, Circuit Judge.

The sole question here is whether appellee, the named beneficiary and the recipient of the proceeds of an insurance policy on the life of her deceased husband, is liable as a transferee for the husband's unpaid income taxes in an amount exceeding the cash surrender value of the policy, where the husband died insolvent.

The facts in the record are undisputed. Appellee is the widow and administratrix of Layton E. Truax, who died insolvent on May 11, 1949, owing back income taxes for years ending August 31, 1946, and August 31, 1947, in the amount of $3,485.43 and interest. Appellee received $10,072.13 as beneficiary of a life insurance policy issued to decedent on June 1, 1946. Decedent had paid the premiums on the policy, which provided that he was entitled to borrow against or receive the cash surrender value and to change the beneficiary of the policy. The record here does not show that decedent was insolvent at any time prior to his death. The cash surrender value of the policy at the time of his death was $411.77. The District Court held appellee liable for that amount with interest from the date appellee received the insurance proceeds, and the Government appealed, contending that appellee is liable for the entire amount of the unpaid taxes, under § 311 of the Internal Revenue Code of 1939, 26 U.S.C. § 311 (1952 Ed.), which provides:

"§ 311. Transferred assets.—(a) Method of collection.—

"The amounts of the following liabilities shall, except as hereinafter in this section provided, be assessed, collected, and paid in the same manner and subject to the same provisions and limitations as in the case of a deficiency in a tax imposed by this chapter (including the provisions in case of delinquency in payment after notice and demand, the provisions authorizing distraint and proceedings in court for collection, and the provisions prohibiting claims and suits for refunds):

"(1) Transferees. The liability, at law or in equity, of a transferee of property of a taxpayer, in respect of the tax (including interest, additional amounts, and additions to the tax provided by law) imposed upon the taxpayer by this chapter.

\*    \*    \*    \*    \*    \*

"(f) Definition of 'transferee'. As used in this section, the term 'transferee' includes heir, legatee, devisee, and distributee."

This case turns upon the question whether the "liability, at law or in equity" of a transferee referred to in § 311(a) (1) is determined by state law, or may be determined as a matter of federal law from the abstract meanings of those statutory words, there being no federal statute defining that liability more precisely.[1] This question was reserved in Phillips v. Commissioner, 283 U.S. 589, 602, 51 S.Ct. 608, 75 L.Ed. 1289. This circuit and several others early held that the substantive liability of a transferee depends on state law. Liquidators of Exchange Nat. Bank v. United States, 5 Cir., 65 F.2d 316; Harwood v. Eaton, 2 Cir., 68 F.2d 12; Hatch v. Morosco Holding Co., 2 Cir., 50 F.2d 138, certiorari denied *sub nom.* Irving Trust Co. v. United States, 284 U.S. 668, 52 S.Ct. 42, 76 L.Ed. 565; Wire Wheel

---

1. Cf. 26 U.S.C. (1952 Ed.) § 826(c), which we applied in United States v. Gilmore, 5 Cir., 222 F.2d 167. The liability created by that statute is not based on the transferee concept, but on principles of contribution. Nor are there any facts in the record now before us showing that estate taxes were paid out of the regular estate assets; § 826(c) cannot be applied in the present case therefore.

Corporation v. Commissioner, 16 B.T.A. 737, affirmed, 2 Cir., 46 F.2d 1013; Weil v. Commissioner, 2 Cir., 91 F.2d 944; Botz v. Helvering, 8 Cir., 134 F.2d 538; Irvine v. Helvering, 8 Cir., 99 F.2d 265; Tooley v. Commissioner, 9 Cir., 121 F.2d 350. Commissioner of Internal Revenue v. Western Union Telegraph Co., 2 Cir., 141 F.2d 774, held that the question of who is a transferee of property is a matter of federal law, but liability of such a person is to be determined by state law.

Curiously enough, when the courts of appeals first applied § 311 to beneficiaries of insurance policies, they applied *federal* law to determine transferee liability. Pearlman v. Commissioner, 3 Cir., 153 F.2d 560, noted with disapproval on this point, 94 U.Pa.L.Rev. 434; Kieferdorf v. Commissioner, 9 Cir., 142 F.2d 723, certiorari denied 323 U.S. 733, 65 S.Ct. 69, 89 L.Ed. 588. Following the language of these cases, the Tax Court and several District Courts held that a beneficiary in a case like the present one was as a matter of federal substantive law liable for the insured's delinquent income taxes to the extent of the entire proceeds. Aura Grim Bales, 22 T.C. 355; Sadie D. Leary, 18 T.C. 139; Christine D. Muller, 10 T.C. 678; Marjorie U. Sullivan, T.C.M., CCH Dec. 17,436(M); Eleanor Neely, T.C.M., CCH Dec. 17,135(M); United States v. Goddard, D.C.W.D.N.Y., 111 F.Supp. 607. Actually, the Pearlman and Kieferdorf cases do not go that far. In Pearlman, the insured had changed the beneficiary from his estate to his wife while he was insolvent, and more importantly, the tax deficiency was less than the cash surrender value of the policies. In Kieferdorf, the policies were payable to the insured's insolvent estate, and were paid by the estate to the widow as property exempt from execution. The widow was held liable as a transferee, the exemption statute being held not applicable to the Government.

The most recent cases have come back into line with our holding in Liquidators of Exchange Nat. Bank v. United States, supra, and hold that the liability of the beneficiary is determined by state law. Tyson v. Commissioner, 6 Cir., 212 F.2d 16; United States v. New, 7 Cir., 217 F.2d 166; Rowen v. Commissioner, 2 Cir., 215 F.2d 641, 644. The Rowen case is the best reasoned of these and is regarded as the leading case. The Second Circuit pointed out there that § 311 creates a summary method of collection of delinquent taxes from transferees when two elements are present: (1) a liability in law or equity; and (2) a " 'transferee of property of a taxpayer' ". The court held first, that the proceeds of the insurance were never property of the taxpayer; and secondly, although the cash surrender value had been, the applicable state law created no liability on the part of the transferee. The result was that the Government collected none of the insured's delinquent taxes which amounted to more than $400,000.

"Granted that the appellants are transferees as to the cash surrender values of the policies, are they under 'liability, at law or in equity' for their decedent's unpaid income taxes? In determining this question we hold that the local state law governs. For neither by Section 311 nor by any other federal statute is the *liability* of such a transferee defined. Granted that Congress by specific legislation might have pre-empted the field, it has not chosen to do so. As a result, when Congress extended its general tax-collection procedure to the 'liability' of a transferee it necessarily must have intended that the existence of liability should be determined by State law. Other than the State law, there is no source to which we may look for pertinent authority." Rowen v. Commissioner, 2 Cir., 215 F.2d 641, 647.

We are in complete agreement with this holding and the reasoning quoted; and in the only other case in which we passed on the question, we so held. Liquidators of Exchange Nat. Bank v. United States, 5 Cir., 65 F.2d 316. In United States v. Gilmore, 5 Cir., 222 F.2d

167, we found that the payment by the administratrix of estate taxes from regular estate assets gave rise to liability of the beneficiary of the decedent's life insurance by virtue of an express federal statutory duty of contribution, which the Government can compel the administratrix to enforce for its benefit. 26 U.S.C. (1952 Ed.) § 826(c). Our majority opinion there was of course consistent with our present opinion that in the absence of a federal statutory liability, the only source of liability is state law; and Judge Hutcheson's dissenting opinion very forcefully took that position. 222 F.2d 171. We think it is quite significant also that the Government has indicated that in regard to the New and Rowen cases, supra, applications by the Government for certiorari have not been authorized by the Justice Department nor does the Justice Department contemplate taking the cases to the Supreme Court. 5 CCH Federal Tax Reporter (1955) 51,-511–512. We observe also that the holding in Rowen that state law is applicable and that the beneficiary is not liable for the entire proceeds of the insurance has met with approval in the legal periodicals. 55 Columbia L.Rev. 98; 103 U.Pa.L.Rev. 431; 41 Va.L.Rev. 266. We take no exception to the statement in the Government's brief of the principles determining the applicability of state law to federal tax matters. We agree with that statement and think that it gives support to our reasoning:

"Whether or not the incidence is to be determined under federal or state law is controlled by the intention of Congress. * * * Among the tests [As set forth in Doll v. Commissioner, 5 Cir., 149 F.2d 239, 242 * * *] developed in determining that intention are that state law does control 'unless the language or necessary implication' of the statutory revenue provision so [sic] requires [Helvering v. Stuart, 317 U. S. 154, 161, 63 S.Ct. 140, 87 L.Ed. 154; United States v. Pelzer, 312 U.S. 399, 402, 61 S.Ct. 659, 85 L.Ed. 913]; whether, as to such provision, a uniform application of a nationwide scheme of taxation would be interfered with if state law were the criterion; and whether the purposes of the taxing act would be avoided or defeated by applying state law." [2]

■ Since on principle and precedent we are convinced that Georgia law must determine the question of liability of the appellee, we proceed to examine the Georgia law in point. The applicable statutes provide as follows, Georgia Code Annotated, Title 56, §§ 56–903, 56–905.

"§ 56–903. *To whom insurance money to be paid.*—The insured may direct the money to be paid to his personal representative or to his widow, his children, or his assignee. Upon such direction given, and assented to by the insurer, no other person may defeat the same: Provided, however, that assignment of the money shall be good without such assent."

"§ 56–905. *Creditor's rights in proceeds of policy. Notice by creditor. Annuity contracts.*—If a policy of life or endowment insurance,

---

2. See also Note, 47 Columbia L.Rev. 629, 631:
"By hypothesis, the national law nearly always must operate on some foundation of preexisting state interests. If national common law is used to define the legal interest instead of state law, a too vigorous application of the national law might easily raise a substantive due process question. * * * If the national government should attempt to adopt its own substantive definitions of state-created interests on which national causes of action rest, a situation may develop in which a person is subjected to burdensome nationally created duties and liabilities as the holder of such state-created interests for the purpose of the national cause of action. At the same time, when this individual attempts to assert his rights as defined by the national government, the state courts may refuse and the federal courts will be compelled to refuse under the doctrine of Erie v. Tompkins [R. Co., 304 U.S. 64, 58 S.Ct. 817, 82 L. Ed. 1188, 114 A.L.R. 1487] to enforce that same interest. Thus a person may be taxed on a non-existent interest."

whether heretofore or hereafter issued, is effected by any person on his own life, or on another life, in favor of a person other than himself, or, except in cases of transfer with intent to defraud creditors, if a policy of life or endowment insurance is assigned or in any way made payable to any such person, the lawful beneficiary or assignee thereof, other than the insured or the person so effecting such insurance or executors or administrators of such insured or the person effecting such insurance, shall be entitled to its proceeds and avails against the creditors and representatives of the insured and of the person effecting the same, whether or not the right to change the beneficiary shall be reserved or permitted, and whether or not the policy shall be made payable to the person whose life is insured if the beneficiary or assignee shall predecease such person: Provided, that, subject to the statute of limitations, *the amount of any premiums for said insurance paid with intent to defraud creditors, with interest thereon, shall inure to their benefit from the proceeds of the policy;* but the company issuing the policy shall be discharged of all liability thereon by payment of its proceeds in accordance with its terms, unless before such payment the company shall have written notice, by or in behalf of a creditor, of a claim to recover for transfer made or premiums paid with intent to defraud creditors, with specifications of the amount claimed. * * *" (Emphasis added.)

■ Thus under Georgia law, the Government can recover no more than the amount of premiums fraudulently paid; here, there was not a particle of proof of any fraudulent payments, or that decedent was insolvent at the time of paying any premium. Hence, the Government has not shown any right to recovery whatsoever.

■ The Government contends that these Georgia statutes are not applicable to the Government because they are exemption statutes. But on the contrary, we think they are not exemption statutes. They do not create an exemption of a debtor's property from execution, as in Kieferdorf v. Commissioner, supra, but a special cause of action for a creditor against one who is not his principal debtor. See Rowen v. Commissioner, 2 Cir., 215 F.2d 641, 649–650. We do not pass on the Government's major premise that a state exemption statute does not apply to the Government under § 311, creating a procedure to enforce an undefined "liability, at law or in equity". It can be argued that in this particular case, where the liability to be enforced is incorporated by reference, so to speak, from state law, that a state exemption statute should apply, even though in the usual case of an express federal tax liability imposed *irrespective* of state law, state exemption statutes are inapplicable. See 55 Columbia L. Rev. 98, 100. We find it unnecessary to decide this point.

Nor is it necessary to decide whether the beneficiary here was really a transferee of a property interest of the decedent in the insurance, and if so, whether she was a transferee of the entire proceeds, the accumulated reserve or simply of the cash surrender value at the time of death; since we decide that there is no substantive basis of liability beyond the amount of premiums fraudulently paid, if there were any. It is not of the slightest consequence in our view of the case, that 26 U.S.C. (1952 Ed.) § 811 makes insurance proceeds such as these part of decedent's gross estate for tax purposes. The Government advances the argument that this proves there was a transfer of property from decedent to beneficiary. As we have said, it is immaterial to our decision whether there was such a transfer or not.

■ This case was tried with a clear understanding by the parties of what

**234**

the sole issue was and what the applicable statutes were. Since the Georgia statute quoted above expressly creates a right in creditors to "the amount of any premiums for said insurance paid with intent to defraud creditors, with interest", we are satisfied that the reason the Government did not obtain a stipulation of or introduce any proof of any fraudulent premium payments, was that it had no evidence of any. Thus, the Government did not even prove that it was entitled to judgment in the amount of the cash surrender value. No appeal was taken by appellee, so we may not consider the propriety of that adjudication. But the Government has had a fair opportunity to present its case, and from the record it appears to us reasonably certain that it could not prove on a second trial that it is entitled to more than it has already recovered. We see no just reason to remand this case for a determination as to whether any premiums were paid fraudulently by decedent, 28 U.S.C.A. § 2106. The judgment is therefore

Affirmed.