Jean F. STERN, Petitioner,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent.

No. 12840.

United States Court of Appeals Sixth Circuit.

Feb. 26, 1957.

Walter E. Barton, Washington, D. C. (William H. Beck and William B. Martin, Lexington, Ky., on the brief), for petitioner.

Kenneth E. Levin, Washington, D. C. (Charles K. Rice, Lee A. Jackson and A. F. Prescott, Washington, D. C., on the brief), for respondent.

Before SIMONS, Chief Judge, and STEPHENS* and McALLISTER, Circuit Judges.

McALLISTER, Circuit Judge.

Jean F. Stern, petitioner, was the beneficiary of seventeen insurance policies, of the face amount of $60,255, on the life of her husband, Dr. Milton J. Stern, who died June 12, 1949. Dr. Stern, in the contracts of insurance, had reserved the right to change the beneficiary, as well as to draw the cash surrender value of the policies up to the time of his death. However, he never did draw any of the cash surrender values. Petitioner had been named beneficiary in the policies at various times between March 13, 1919—thirty years before her husband's death—and July 11, 1934—fifteen years before her husband's death.

Six years after Dr. Stern's death, respondent Commissioner of Internal Revenue, determined that petitioner was subject to the income tax liability of her deceased husband with regard to the proceeds of the life insurance policies on the ground that she was a transferee of such proceeds, and that the Estate of Milton J. Stern, Deceased, had transferred these proceeds to her. The Commissioner, in his answer to Mrs. Stern's petition, set forth that "during the year 1949, the estate of Milton J. Stern, deceased, without consideration, diverted and transferred to petitioner, assets having an aggregate then fair market value of not less than the deficiency in tax, penalties and interest thereon, which are here in dispute," and that "by reason of said transfer, without consideration, from the estate of Milton J. Stern, deceased, to petitioner, said estate of Milton J. Stern, deceased, was, or became, insolvent and unable to pay the deficiencies in tax, penalties and interest thereon, here in dispute." There was no evidence and no finding of insolvency as of any date prior to decedent's death; and there was no evidence or finding that decedent took out or maintained the policies with intent to hinder, delay or defraud his creditors. The Tax Court agreed with the respondent's contention and held that the government could follow the proceeds of the insurance policies into the hands of the beneficiary.

In Tyson v. Commissioner of Internal Revenue, 6 Cir., 212 F.2d 16, 17, the same question was before this court, and the Commissioner contended in similar fashion that the beneficiary of a life insurance policy was a transferee of a deceased taxpayer in respect of the proceeds of life insurance received after the death of the deceased, under Section 311 of the Internal Revenue Code of 1939, 26 U.S.C.A. § 311. However, in that case, we held that the widow who was the beneficiary of a life insurance policy of her husband's life and who received the proceeds thereof after his death was not liable for his unpaid income taxes, as transferee of her husband's assets, and in so holding, said: "The failure of the husband to change the beneficiary from his wife to his estate is not a voluntary transfer of the proceeds of said policy within the meaning and scope of the Federal Transferee Statute, Section 311 (a) (1), (f) of the Internal Revenue Code."

In Rowen v. Commissioner of Internal Revenue, 2 Cir., 215 F.2d 641, 646, the court held that a widow, who in that case was a beneficiary of a life insurance policy of her deceased husband, was not lia-

---

* Albert Lee Stephens of the Ninth Circuit.

ble as a transferee under Section 311. The court pointed out that Section 311 applied only to a transferee of the property of a taxpayer, and held that the widow was not a transferee with respect to the proceeds of the policies, inasmuch as they had never been the property of the deceased taxpayer. The court distinguished Section 311, which was, by its express terms, limited to the collection of income tax obligations, from Section 811, in which the Estate Tax was imposed upon a beneficiary who had received the proceeds of a life insurance policy "with respect to which the decedent possessed at his death any of the incidents of ownership." The court said that the "failure of Section 311(f) to extend the definition of a transferee to include a 'beneficiary' as was done by I.R.C. § 900, for purposes of estate tax collection, we think supports our holding that for purposes of income tax collection a beneficiary was not intended to be classed as a transferee *as to the proceeds of a policy*." The court declared that while "Congress by specific legislation might have pre-empted the field, it has not chosen to do so. As a result, when Congress extended its general tax-collection procedure to the 'liability' of a transferee, it necessarily must have intended that the existence of liability should be determined by State law. Other than the State law, there is no source to which we may look for pertinent authority." Rowen v. Commissioner of Internal Revenue, 2 Cir., 215 F.2d 641, 647.

■■■ In the instant case, the relevant State law is that of Kentucky, which was the State of domicile of petitioner and her deceased husband. According to the statutes of Kentucky, the lawful beneficiary of a life insurance policy is entitled to the proceeds of the policy as against the representatives or creditors of the insured. Section 655 of Kentucky Revised Statutes 1936, and Section 304.691 of Kentucky Revised Statutes 1953. Such State statute is applicable to the claim of the Federal government. Rowen v. Commissioner of Internal Revenue, supra; United States v.

Truax, 5 Cir., 223 F.2d 229. Petitioner, accordingly, is entitled to the proceeds of the insurance policies as against the claim herein asserted by respondent.

■■ The Tax Court, however, in the instant case, stated that it would follow its own prior decisions in spite of numerous reversals of such holdings by the Courts of Appeal, specifically alluding to the decision of this court in Tyson v. Commissioner, supra, as well as the decisions in Rowen v. Commissioner of Internal Revenue, supra, United States v. Truax, supra, and United States v. New, 7 Cir., 217 F.2d 166.

In Stacey Manufacturing Co. v. Commissioner of Internal Revenue, 237 F.2d 605, 606, this court said in a similar instance that "the Tax Court of the United States is not lawfully privileged to disregard and refuse to follow, as the settled law of the circuit, an opinion of the court of appeals for that circuit. If the tax court is not bound on questions of law by decisions of the appropriate circuit having jurisdiction, why should any jurisdiction be vested in circuit courts of appeals to review decisions of the tax court? The district courts of the several circuits also have statutory jurisdiction in tax cases and they are bound to follow the rules of decision pronounced by the United States Court of Appeals having appellate jurisdiction over the particular district court. The tax court is no less bound to do so. The mere fact that it is a court having jurisdiction in tax cases throughout the United States does not establish the tax court as superior in any aspect to the United States District Courts." We here reaffirm our opinion in Tyson v. Commissioner of Internal Revenue, supra.

Respondent Commissioner, however, still insists that the Tax Court's opinion should be here followed, in spite of the fact that this Court has expressly ruled to the contrary in Tyson v. Commissioner of Internal Revenue, supra; but, while so contending, submits that the decision of the Tax Court should also be sustained on what is termed "a lesser position"—that petitioner, if not liable as

a transferee of the proceeds of the policies, is nevertheless liable as a transferee of the cash surrender value.

 With respect to petitioner's liability as a transferee of the cash surrender value of the policies, we are of the view that petitioner is not so liable.

In the first place, she was not the transferee of the cash surrender value of the policies any more than she was the transferee of the proceeds of the insurance policies. The only person who had any right to receive the cash surrender value was petitioner's husband. After he died, there remained no cash surrender value. Petitioner did not receive the cash surrender value, but received something wholly different in character and in amount—the proceeds from the insurance policies. As an instance, the cash surrender value to Dr. Stern at the time of his death of one of the policies was $297. The value of the proceeds of the policy to Mrs. Stern was $1,000. The cash surrender value was never the property of the widow. The life insurance proceeds were never the property of decedent or of his estate. They were payable to the widow, not as part of decedent's estate, or as a transferee of his estate, but because her husband had entered into a speculative contract with the insurance company, many years before, that it would pay his widow these sums on a certain contingency—his death; and they further depended upon other contingencies that he would pay the premiums at certain stated times. Under the statute, petitioner would be liable for her husband's income taxes only if she had received a transfer of his property at his death. Section 311(a)(1) of the Internal Revenue Code of 1939. She did not receive any transfer of his property at his death. It might well be that if the statutory provisions of the Estate Tax were here applicable to the cash surrender values, the widow would be liable as a beneficiary, since the decedent at his death possessed the incidents of ownership of securing for himself such cash surrender values, Title 26 U.S.C.A. § 811(g) (2), but this is not a case involving Estate Tax collection, but, on the other hand, income tax collection; and under the provisions of the income tax statute, the beneficiary widow was not a transferee either of the proceeds of the life insurance policies, or of the cash surrender values.

We are cognizant of the holding by high authority that it is indisputable that policies similar to those in this case were assets of the decedent in his lifetime, as to their cash surrender values, and that, since, under the terms of the policies, nothing passed on his death, it is unrealistic to view his death as wiping out those values. Further, that under the policies, his death was merely the condition upon which the surrender values no longer were payable to the decedent, but became merged in the greater values which the insurers were obligated to pay the beneficiary. Rowen v. Commissioner of Internal Revenue, supra. However, with deference to the foregoing view, it appears to us that, upon the death of the insured, the cash surrender values no longer existed. To say that the cash surrender values on the death of the insured became merged with the proceeds of the policies paid to the widow is figurative. If the cash surrender values became merged with the proceeds paid to the widow, it might be said perhaps that the cash surrender values, in case the policies were forfeited for nonpayment of premiums merged with the profits of the insurance companies. But such a figure of speech does not seem to point the way of resolving the issue.

To deprive the widow of the face value of the policies,—and permit the Collector to take the cash surrender values,—it must be held that the cash surrender values were assets of the decedent in his lifetime; that such cash surrender values were part of the proceeds of the policies paid to the widow; and that the widow received these cash surrender values, under the provisions of the income tax statute, as a transferee of the estate of her husband. None of these propositions seems valid.

The cash surrender values were not assets of the decedent during his lifetime. In Murphy v. Casey, 150 Minn. 107, 184 N.W. 783, 784, where policies of life insurance were issued to a man payable at his death to his mother, with the reserved right on his part as the insured to change the beneficiary at any time, and the option was reserved to the insured to receive the cash surrender values, on his demand, without right of restraint from the beneficiary, it was held that the right or option reserved to the insured to surrender the policies and demand the cash surrender values could not be attached or levied upon by a creditor whose claim arose subsequent to the issuance of the policies, so long as the right of the beneficiary to the ultimate payment of the policies, at the insured's demand, remain in force and effect. In the foregoing case, the applicable state statute provided:

"Whenever any insurance is effected in favor of another, the beneficiary shall be entitled to its proceeds against creditors and representatives of the person effecting the same."[1]

The sole issue, insofar as is here relevant, was the asserted right of the judgment creditor to resort to, and levy execution upon, the interest of the insured in the cash surrender options and values thereof. In deciding the case, the Supreme Court of Minnesota held that the policies in question, so long as they remained without change of beneficiary, by death or otherwise, were exempt from the claims of creditors; and that the interest of the insured, sought to be reached, was not available to such creditors. The court said "To grant the relief * * * would in our view of the matter wholly destroy the intent of the statute and deprive beneficiaries in such

cases of the protection the Legislature intended to secure to them. While it is true that the insured may cash in his policy without regard to the wishes of the beneficiary, that reserved right, since the insurance was effected and taken out for the benefit of the latter, to give force and effect to the statute, must, as to creditors seeking to exercise it in the place and stead of the insured, be deemed and held subordinate to the rights of the beneficiary. There are no sound reasons, either in morals or in equity and good conscience, why a creditor, to the detriment of the beneficiary, should be given the right and privilege of the insured in such cases. No credit is extended to the insured on the faith of the insurance, for all persons dealing with him are bound to know the law and that money to become due thereon when payable to a third person is exempt from their claims. The statute is wise in its purpose, securing as it does after the death of the insured, pecuniary aid and assistance to the beneficiary, usually someone who is dependent upon the insured for support, and should not be frustrated or impaired by opening the door to those who have no just or equitable claim to the money. The authorities sustain this view of the question. In re Johnson (D.C.) 176 F. 591, involved the construction of our statute in federal bankruptcy proceedings, and the conclusion stated was there applied. The court followed the rule of other federal courts and held that the insurance policy there involved did not pass to the trustee in bankruptcy, for the reason that *it was exempt* under our statute *to the beneficiary*. (Emphasis supplied.) In re Pfaffinger (D.C.), 164 F. 526; Holden v. Stratton, 198 U.S. 202, 25 S.Ct. 656, 49 L.Ed. 1018; Hiscock v. Mertens, 205 U. S. 202, 27 S.Ct. 488, 51 L.Ed. 771. * * * To hold with plaintiff on ei-

---

1. The state statute here applicable is phrased in substantially the same terms: "When a policy of insurance is effected by any person on his own life or on another life in favor of some person other than himself, having an insurable interest therein, the lawful beneficiary thereof, other than himself or his legal representatives, shall be entitled to its proceeds against the creditors and representatives of the person effecting the same * * *." Section 655 of Carroll's Ky.Statutes 1936. To the same effect is Section 304.691 of Ky.Revised Statutes of 1953.

ther point would result in the destruction of rights the Legislature intended to secure to the beneficiaries in such insurance contracts. To extend to the creditor the option to surrender the policy for the cash value would wipe out the rights of the beneficiary altogether. * * * Other uncertainties and questions readily are suggested, all to the detriment of the beneficiary and all impairing the rights intended to be secured by the statute. The court should not create a situation which will bring about results of the kind."

In re Pfaffinger, supra, was a case from the District Court for the Western District of Kentucky, and involved the identical state statute here before us. Under that statute it was provided that a lawful beneficiary designated in a life insurance policy other than the insured or his legal representatives, shall be entitled to the proceeds thereof as against the creditors or representatives of the insured. The trustee in bankruptcy of the insured sought the cash surrender values of the life insurance policies in which the insured's wife was beneficiary, and according to the terms of which, the insured had the right to change the beneficiary with the company's consent. The trial court denied the trustee the right to secure the cash surrender values, declaring that the state statute, in the language heretofore quoted, *exempted such policies from liability to the demand of creditors;* that the effect of the Supreme Court's holding in Holden v. Stratton, supra, gave the Kentucky statute controlling influence in determination of the case; and that in Lockwood v. Exchange Bank, 190 U.S. 294, 23 S.Ct. 751, 47 L.Ed. 1061, the Supreme Court had held that title to exempt property never passes to the trustee, and, accordingly, the District Court held that the cash surrender values did not pass to the trustee in bankruptcy in the case then before it.

It is true that these cases speak of life insurance policies as being exempt from liability to the demands of creditors; and, of course, it is well established that state exemption laws are ineffective against the statutory liens of the United States for federal taxes, and where federal statutes subject to taxation specified property over which the deceased possessed, during his lifetime, the incidents of ownership—such as securing for himself the cash surrender values of life insurance policies—as provided in the statutory provisions of the Estate Tax. But the exemptions mentioned in the foregoing cases are not the ordinary exemptions to which the insured, or the deceased, was entitled as a debtor, under the state laws or the bankruptcy statutes. The exemptions of which those cases speak are exemptions to the beneficiary of life insurance policies.

The cash surrender values were not part of the proceeds of the insurance policies paid to the widow, and to hold otherwise would seem to transform plain language to the advantage of the tax-gathering authority, and to the loss of the widow. The widow did not, in any sense, receive the cash surrender values as a transferee of the estate of her deceased husband. The rights of the parties to this suit, and the rights of all parties concerned in the contract of insurance, depended entirely upon the agreements executed between the insured and the insurance companies that it would pay the husband the cash surrender values, only on his demand, in lieu of paying his widow the amount of the policies after his death. If the insured did not demand such payment, the insurance companies were bound to pay the entire proceeds of the policies to the insured's wife, upon his death. There is a positive moral obligation upon a husband to protect his wife against destitution, by providing insurance for her in case of his death. After a husband has paid premiums for thirty years to insure that his wife will be preserved from suffering and want, it would be contrary to public policy and inhumane to permit creditors, whose claims arose subsequent to the execution of the policies of insurance and subsequent to the payment of the premiums, to snatch from

the widow, after her husband's death, the large cash surrender values merely because of the provision in which the husband had reserved a right thereto, which he had never exercised. No statutes require that such hardship be inflicted upon a widow, whose husband has continuously, during the long course of their marriage, sought to protect her, by providing insurance against the day when she would be left alone.

In this case, the government is in no better position than any other creditor. The insurance was not built up, nor were the premiums paid, at the expense of the government, or in fraud of the government.

In accordance with the foregoing, it follows that petitioner is not liable as a transferee of decedent's estate, or of decedent, in respect of the income taxes and penalties claimed; and the decision of the Tax Court is, therefore, reversed.