**UNITED STATES of America, Plaintiff,**

v.

**Victoria M. OTT, Defendant.**

**No. 13156.**

United States District Court
E. D. Michigan, S. D.

Sept. 24, 1958.

Charles K. Rice, Asst. Atty. Gen., James P. Garland, John J. Sexton, Attys., Dept. of Justice, Washington, D. C., Fred W. Kaess, U. S. Atty., John L. Owen, Asst. U. S. Atty., Detroit, Mich., for plaintiff.

McCabe, Middleton & Kennedy, Detroit, Mich., for defendant.

FREEMAN, District Judge.

This is an action brought by the plaintiff, United States of America, to recover from the defendant, Victoria M. Ott, wife of Albert J. Ott, deceased, the proceeds of an insurance policy on the life of Albert J. Ott, and several annuity policies purchased by, or on behalf of,

Albert J. Ott, during his lifetime. The government claims the proceeds of these policies on the theory that Albert J. Ott owed income taxes as of the time of his death and that Victoria M. Ott is the transferee without consideration of the benefits of these policies, and therefore holds all such gratuitous benefits as a trustee for the benefit of the creditor, United States of America.

The case was submitted to the court on stipulated facts, and counsel for both parties have filed briefs.

The pertinent facts of this case may be briefly summarized as follows:

Albert J. Ott died on or about April 17, 1946. On January 23, 1948, the Commissioner of Internal Revenue assessed against Mr. Ott, deceased, additional income taxes for the year 1943, in the amount of $17,730.50 plus $4,101.33 interest thereon and additional income taxes for the year 1944 of $6,986.21 plus interest thereon in the amount of $1,196.84, for a total assessment of $30,014.88. Claim for this amount was filed by the government against decedent taxpayer's estate in the probate court for Wayne County, Michigan. On August 1, 1946, that court entered an order granting Victoria M. Ott a widow's allowance of $1,000 per month for the twelve months ending March 16, 1947. This amount was paid from the estate, as, evidently, were other sums as expenses of administration of the estate. The last accounting filed by the Detroit Trust Company, administrator of the estate with will annexed, shows that the estate was insolvent, and that after payment of all expenses and the widow's allowance, the balance of $4,844.75 had been paid over to the Collector of Internal Revenue toward the tax liabilities involved herein. Thus, the estate of Albert J. Ott, as of the time of his death, was insolvent and there now remains unpaid a considerable sum due as unpaid income taxes.

During his life, Mr. Ott purchased an insurance policy and several annuity contracts from the Mutual Benefit Life Insurance Company, which are outlined below:

1. *Life Insurance Contract No. 725941.* This was an ordinary life policy on the life of Albert J. Ott in the face amount of $1,000. Mr. Ott paid all premiums. Defendant was the beneficiary. The value on the death of Mr. Ott was $1,009.92, and the cash surrender value just prior to his death was $704.51.

2. *Two cash refund deferred annuity contracts numbered 9532 and 9532½.* These were annuity contracts during the life of Albert J. Ott with a guaranteed cash refund to Victoria M. Ott. The cash refund payable to her, as of the death of Mr. Ott, was, on policy No. 9532, in the amount of $31,604.14, and, on policy No. 9532½, in the amount of $10,543.73. Mrs. Ott elected to leave the proceeds with the company and now receives the monthly payments. Mr. Ott was entitled to these annuities for life; on his death the designated beneficiary, Mrs. Ott, was entitled to a cash refund equal to the difference between the aggregate premiums paid and the aggregate periodical payments received. Premiums on these policies were paid with funds of the Ott Machinery Sales Pension Trust which received the funds from the Ott Machinery Sales, Inc. These funds were declared by the Commissioner of Internal Revenue to be constructive dividends to Albert J. Ott, and it is the income tax on these receipts by Mr. Ott that is the basis of the government's claim in this action.

3. *Annuity No. 9214.* Valued in the federal estate tax return as $1,112.12, a sum derived from the replacement cost of the annuity, as of the death of Mr. Ott. This contract provided for payment to Mr. Ott of $10 per month during his life and on his death payment of $10 per month to Mrs. Ott during

her life. She has been receiving these payments.

4. *Continuous instalment certificate No. 5-2194.* This certificate provided for monthly instalments for ten years certain and during the lifetime of the survivor of Mr. and Mrs. Ott, who, jointly, or the survivor of them, could elect to take the commuted value prior to the expiration of the ten-year period. On his death, Mr. Ott owned an interest in this certificate including the right jointly with Mrs. Ott to commute the value of the instalments certainly payable. Mrs. Ott has the certificate and has been receiving a monthly annuity of $90.39. Value on date of death of Mr. Ott was $10,561.82.

The government proceeds on the theory that it has a right to recover the amount of taxes owed by Mr. Ott, from his wife, as a transferee of property of a delinquent taxpayer. The government bases its case on the powers granted to it by the Internal Revenue Code of 1939, sec. 311, 26 U.S.C.A. (1939 Code), sec. 311. The pertinent provisions of this section provide:

"§ 311. Transferred assets

"(a) Method of collection. The amounts of the following liabilities shall, except as hereinafter in this section provided, be assessed, collected, and paid in the same manner and subject to the same provisions and limitations as in the case of deficiency in a tax imposed by this chapter (including the provisions in the case of delinquency in payment after notice and demand, the provisions authorizing distraint and proceedings in court for collection, and the provisions prohibiting claims and suits for refunds):

"(1) Transferees. The liability, at law or in equity, of a transferee of property of a taxpayer, in respect of the tax (including interest, additional amounts, and additions to the tax provided by law)

imposed upon the taxpayer by this chapter. * * *

"(f) Definition of 'transferee'. As used in this section, the term 'transferee' includes heir, legatee, devisee, and distributee."

The defendant contended on trial that the United States could not impose transferee liability on defendant because the government had no more than the rights of an ordinary creditor under state law, and a Michigan statute specifically exempted the proceeds and avails of policies of insurance and annuity contracts from claims of creditors where premiums on such policies were not paid with intent to defraud creditors.

After trial, the government filed a brief in which it conceded that this case, as to the insurance policy only, is governed by the holdings of the Court of Appeals for the Sixth Circuit in Tyson v. Commissioner, 212 F.2d 16, insofar as the proceeds of the insurance policy are concerned, and Stern v. Commissioner, 6 Cir., 242 F.2d 322, insofar as the cash surrender value of the insurance policy is concerned. As to the annuity contracts, however, the government maintained its position that funds received from these contracts by Mrs. Ott could be recovered because of the liability as a transferee imposed on her by Sec. 311, I.R.C.1939, supra.

Certiorari having been granted by the United States Supreme Court in Stern v. Commissioner, supra, and also in United States v. Bess, 3 Cir., 243 F.2d 675, affirmed 357 U.S. 51, 78 S.Ct. 1054, 2 L.Ed.2d 1135, another related case, this court withheld decision to await the disposition of those cases which have now been decided by the Supreme Court, and are controlling of the issues in the instant case.

### The Insurance Policy

As stated above, the government has conceded that its position in regard to the insurance policy is not tenable in view of the decisions of the Sixth Circuit Court of Appeals in Tyson v. Commissioner and Stern v. Commissioner,

supra. Therefore, since Stern has been affirmed by the Supreme Court, Commissioner of Internal Revenue v. Stern, 1958, 357 U.S. 39, 78 S.Ct. 1047, 2 L.Ed. 2d 1126 and Tyson constitutes ruling precedent in this circuit, it is not necessary that the court do more than dismiss the government's claims based on the insurance policy. However, since the law relevant to the insurance issue is the only available precedent analogous to the issues presented by the attempt of the government to assert a transferee liability over the recipient of the benefits of the annuity contracts, the court will briefly outline the effect of the decisions in Stern and Bess on the insurance issue in this case.

In Stern, the Supreme Court was faced with a case involving an attempt by the government to recover unpaid taxes from a beneficiary of insurance policies purchased by the debtor-taxpayer prior to his decease. The government had not filed a claim for the unpaid taxes prior to the death of the taxpayer. The government contended that it was empowered by Sec. 311, I.R.C.1939, supra, to assess this tax liability against the insurance beneficiary, regardless of state law, since Sec. 311 represented a congressional intent to establish a substantive federal right. The court held that the government could not recover from the beneficiary, since the particular state involved (Kentucky) had enacted a statute protecting the insurance proceeds and cash surrender value from creditors, and the United States derived its powers to recover from state law. The Court specifically rejected the argument that general federal law governed the rights of the United States, and held that the United States could only recover within the limits of rights afforded to creditors under the applicable state law.

In Bess, the Court considered a case where the government had perfected its lien as to the cash surrender value of the policy prior to the decease of the delinquent taxpayer, and had been allowed a recovery of the cash surrender value, and not the proceeds of the policy,

in the Court of Appeals. The Supreme Court held that the government could recover the amount of the cash surrender value, since it had perfected a lien on actual property of the debtor taxpayer during the time this property interest existed. The Court reasoned that the debtor, during his lifetime, had a right to receive the cash surrender value from the insurer and therefore, during his life, had a property interest to which a lien could attach, and since this lien arose as a matter of federal law under Sec. 3670, I.R.C.1939, 26 U.S.C.A. § 3670, state law was inoperative to defeat it. As to the proceeds of the policy, (i. e., that sum over and above the amount of the cash surrender value as of the date of death), the court held that the government's right to receive this sum was governed by state law and, under its decision in Stern, the United States could not recover that amount, since under the applicable state law (New Jersey) a beneficiary of a policy of life insurance is entitled to its proceeds against all creditors except premiums paid in fraud of creditors.

Applying Stern and Bess to the facts of this case, it is readily apparent that the government may not recover either the proceeds or the cash surrender value of the insurance policy. The government did not discover any tax deficiency in this case until after Mr. Ott's decease, and, therefore, did not perfect any lien under Sec. 3670, I.R.C.1939, supra, by making demand, prior to his death. Michigan law clearly exempts the proceeds and cash surrender value of life insurance policies from the claims of creditors, and, in the absence of an effective lien under Sec. 3670, the rights of the government to recover on a theory of transferee liability are clearly governed by state law.

Sec. 24.287, Michigan Statutes Annotated, provides, in part:

"If a policy of insurance, or contract of annuity * * * is effected by any person on his own life or on another life in favor of a person other than himself, * *

the lawful beneficiary or assignee thereof (other than the insured or the person so effecting such insurance, or his executors or administrators) shall be entitled to the proceeds and avails (including the cash value thereof) against the creditors and representatives of the insured and of the person effecting the same * * * : *Provided,* That, subject to the statute of limitations, the amount of any premiums for said insurance paid with intent to defraud creditors, with interest thereon, shall inure to their benefit from the proceeds of the policy: * *." Comp.Laws 1948, § 522.24.

It is interesting to note that the language of the Michigan statute is almost identical to that of the Kentucky statute held to govern the result in Stern, supra, cf. Ky.Rev.Stat., Sec. 297.140. Because the two statutes are so similar it can safely be said that Stern is precisely in point and governs the outcome of this issue. Therefore, this court renders a judgment of no cause for action as to the government's claims to recover under the insurance policy.

### The Annuity Contracts

Neither counsel for the government nor defendant have cited, nor has the court found, any case dealing with the powers of the government to assert a transferee liability against the beneficiary of a contract of annuity. Thus, it appears that this case is one of first impression as to these claims of the government.

The government contends that even though the law in this circuit prohibits its recovery of sums received under the insurance policy, it still should be allowed to recover the payments made to Mrs. Ott under the annuity contracts, because of the differences between annuities and insurance policies. In its brief the government points out that, under annuity contract No. 9214, Mr. Ott had a right to $10 per month during his life and Mrs.

Ott has a right to $10 per month after his death, during her lifetime. Under Continuous Instalment Certificate No. 5–2194, Mr. and Mrs. Ott had joint rights which became Mrs. Ott's rights after his death. The government contends that these rights are similar to the cash surrender value under the life insurance policy and that therefore it should be able to recover the proceeds of annuities as it should recover the cash surrender value of the life insurance. In regard to Annuity Contracts Nos. 9532 and 9532½, the government argues that Mr. Ott had a right to an annuity during his life and on his death defendant had a right to recover the difference between the amount of annuity payments to Mr. Ott and the amount of premiums paid. Thus, her right was contingent upon the length of his life, and she received a sum equal to the premiums he had paid. Thus, there is no difference, the government argues, between this sum and the cash surrender value of the life insurance policy.

In Stern, a case which concededly dealt only with life insurance, the Supreme Court held that Sec. 311, I.R.C. 1939, supra, was procedural only, and not intended to grant any substantive rights to the government. Reasoning from this premise, the Court held that the government's rights must be determined by state law, and cited pre-enactment materials clearly indicating that this was the intent of Congress. Cf. H.R.Rep. No. 356, 69th Cong., 1st Sess. at 43. Applying this reasoning, it is clear to this court that the limits of the government's right to recover in any action initiated under the bare authority of Sec. 311 are established by state law.

M.S.A. § 24.287 specifically mentions "contract of annuity" proceeds and avails as being exempt from the claims of creditors if the policy or contract meets the other conditions in that statute. In this one important detail, this statute differs from the Kentucky stat-

ute involved in Stern, supra. It is the opinion of the court that because the Michigan statute specifically mentions annuity contracts it is clear that a creditor in Michigan, at the time this statute was in force, had no right to the proceeds of an annuity contract purchased for another person by his debtor, so long as that contract was not purchased in fraud of creditors.

The government attempts to avoid the operation of this statute by its contention that Judge Thornton, of this District, has held, in Knox v. Great West Life Assurance Co., D.C., 109 F.Supp. 207, affirmed 6 Cir., 212 F.2d 784, 785, that this statute is a state exemption statute, not a substantive statute, that does not protect property from the incidence of federal taxation. A careful reading of the opinions of Judge Thornton and the Court of Appeals indicates that this case does not stand for the proposition for which it is cited. In the Knox case the government had a valid established lien under Sec. 3670, I.R.C. 1939, supra. These opinions hold that, in the words of the Court of Appeals, "Exemptions provided by state laws are ineffective against the statutory liens of the United States for federal taxes." There can be no question of the validity of this result in view of the decision in Bess, supra, where the Supreme Court held that liens established by the government could not be avoided by any state exemption statute. In the case at bar the United States did not establish a lien on the proceeds under Sec. 3670, supra, and as the Supreme Court held in Stern, supra, the rights of the United States must be governed by the applicable state law.

The contention of the government that there is a difference between a mere state exemption statute and a state rule of substantive law is rather obscure and does not appear to be supported in the reported cases. It is true that in Rowen v. Commissioner, 2 Cir., 1954, 215 F.2d 641, the court used language indicating that state "exemption" statutes would not protect against a government claim based upon Sec. 311, supra. However, the court used that language in distinguishing the facts of that case from the facts in Kieferdorf v. Commissioner, 9 Cir., 142 F.2d 723, certiorari denied 323 U.S. 733, 65 S.Ct. 69, 89 L.Ed. 588, where the proceeds of the policies had been paid to the *estate* of the deceased debtor taxpayer, and a California statute had exempted the proceeds from execution of creditors. In Kieferdorf, supra, the court held that state statutes could not operate to prevent attachment by the United States. There, the United States had the advantage of Sec. 311(f), I.R.C.1939, supra, which specifically provides that the term "transferee" includes "heir, legatee, devisee, and distributee." Since the proceeds of the insurance policy there involved were payable to the estate, the ultimate recipient of these proceeds took them as a "distributee" and thus fell within the express provision of Sec. 311, supra. Thus, the language of Rowen v. Commissioner, supra, and Kieferdorf v. Commissioner, supra, stands only for the proposition that the state may not exempt property from the incidence of federal taxation, where Congress has actually imposed a tax liability. In the case at bar, Congress, by the passage of Sec. 311, supra, has not imposed a tax liability on the beneficiary of these insurance policies, but has merely given a procedural remedy to the government, to be exercised only to enforce the substantive right of the government, as a creditor, under state law. In Stern, supra, the Supreme Court discussed the effect of a state statute almost precisely similar to the Michigan statute involved in this case. In disposing of a similar argument by the government regarding the effect of that statute the court said at page 47 of 357 U.S., at page 1052 of 78 S.Ct.:

"The Government, however, argues in its brief, 'Just as in the situation where a tax lien has at-

tached it is held that state law may not destroy that lien, so here, where a tax liability is imposed by Congress, the state may not provide exemptions.' * * * The fallacy in the Government's argument is in the premise that Congress has imposed a tax liability against the beneficiary. We have concluded that Congress has not seen fit to define that liability and that none exists except such as is imposed by state law. Thus there is no problem here of giving effect to state exemption provisions when federal law imposes such liability. * * * "

In the opinion of this court the above statement of the Supreme Court lays to rest any basis for argument that there is a difference between the effect of an "exemption" statute and a rule of substantive state law on the powers of the government under Sec. 311, I.R.C.1939, supra. The government's contentions regarding the effect of M.S.A., Sec. 24.-287, are without merit.

It is clear to the court that under the decisions of the Supreme Court in Stern and Bess, supra, the rights of the United States to assert a claim under Sec. 311, supra, for the proceeds of these annuity contracts must be determined by state law, since the government has failed to obtain a lien under Sec. 3670, supra. It is also clear to the court that, in the absence of fraud, the Michigan statute protects proceeds and avails of annuity contracts from claims of creditors of the purchaser, where such proceeds and avails are payable to someone other than the debtor. Therefore, the court holds that, as a matter of law, the government is barred from any recovery of the proceeds of these annuity contracts. For these reasons, the court renders a judgment of no cause of action in regard to the government's claims under the annuity contracts.

An appropriate order may be presented.